2 So.2d 600

McPHILLIPS MFG. CO. et al. v. CURRY, Com'r of Revenue, et al.

3 Div. 322.

Supreme Court of Alabama.

April 10, 1941.

Rehearing Denied June 5, 1941.

Ball & Ball, of Montgomery, for appellants.

Thos. S. Lawson, Atty. Gen., and John W. Lapsley and J. Edw. Thornton, Asst. Attys. Gen., for appellees.

368

LIVINGSTON, Justice.

This is a bill for a declaratory judgment filed under and by virtue of the provisions of General Acts of 1935, pages 777 et seq. Code 1940, Tit. 7, §§ 156–168. The complainants are the McPhillips Manufacturing Company of Mobile, Alabama, the seller, and Algernon Blair of Montgomery, Alabama, the purchaser of certain doors, cabinets and other building material. The respondents are the Commissioner of Revenue of the State of Alabama and its Attorney General.

The facts controlling the decision of the case were agreed upon, and are set out in the record as follows:

"1. Complainants H. Manning McPhillips and James R. Durhan are both over the age of twenty-one years, respectively, and are citizens and residents of Mobile County, Alabama, and are doing business with their principal office in Mobile, Alabama, under the name and style of McPhillips Manufacturing Company (hereinafter referred to as McPhillips Manufacturing Company) and are engaged in the business of manufacturing and selling doors, cabinets and mill work. Complainant Algernon Blair is over the age of twenty-one years and is a citizen and resident of Montgomery County, Alabama, and is engaged in the general contracting business with his principal office in Montgomery, Alabama. John C. Curry is over the age of twenty-one years and is a citizen and resident of Montgomery County, Alabama, and is the

duly appointed, qualified and acting Commissioner of Revenue of the State of Alabama. Thomas S. Lawson is over the age of twenty-one years and is a citizen and resident of Montgomery County, Alabama, and is the duly elected, qualified and acting Attorney General of the State of Alabama.

"2. Prior to October 3, 1936, the United States of America acquired by purchase various lots and parcels of real estate which together constituted a site for the construction of a housing project to be known as the Smithfield Court Housing Project. Said project was to be erected in accordance with the provisions of the Acts of Congress. Said site is in Jefferson County, Alabama.

"3. On June 18, 1936, the United States of America advertised for competitive bids for the construction of the super-structure of said Smithfield Court Housing Project. In order to make up his bid Algernon Blair calculated all the cost of labor and materials and other costs, both direct and indirect, which would enter into the performance of the work called for in said bid including all taxes then imposed by law and submitted a bid representing the amount for which he offered to do the work. Said bid was accepted and on October 3, 1936, the contract was awarded to and entered into by said Algernon Blair in the amount of $1,569,-727.00, under which he agreed to furnish the labor and material and perform the work called for therein.

"4. Promptly after the award of said contract and on October 26, 1936, Algernon Blair ordered from McPhillips Manufacturing Company at Mobile, Alabama, the mill work called for in said government contract at a price previously submitted of $49,660.00. A copy of said order is attached hereto as Exhibit A, and made a part hereof, and said order was duly accepted on October 27, 1936 by McPhillips Manufacturing Company.

"5. Prior to March 1, 1937 (the effective date of the tax act hereinafter referred to) some of the mill work ordered by Algernon Blair was delivered to him in accordance with the order hereinabove noted on the premises known as the Smithfield Court Housing Project in the city of Birmingham, Alabama, and the purchase price was duly paid by said Algernon Blair to said McPhillips Manufacturing Company. After March 1, 1937, some of said mill work so ordered by Algernon Blair was de-

livered to him in accordance with said order as above noted. The purchase price of said mill work so delivered after March 1, 1937, was paid by Algernon Blair to McPhillips Manufacturing Company after said March 1, 1937, in accordance with the provisions of said order without the addition of 2% of the price thereof. The State Tax Commission of the State of Alabama, predecessor of the State Department of Revenue, of which John C. Curry is the chief executive officer demanded of McPhillips Manufacturing Company 2% of the gross proceeds received by McPhillips Manufacturing Company for the said mill work so delivered after said March 1, 1937, as and for privilege or license tax levied by the provision of an Act of the Legislature of Alabama approved February 23, 1937 (General Acts Ex.Sess.1936–37, page 125). McPhillips Manufacturing Company refused to remit said 2% of the gross proceeds received by it from said Algernon Blair for the said mill work so delivered after March 1, 1937. Said Algernon Blair declined to have said 2% added to the sale price on said mill work so delivered after March 1, 1937, or to pay more than the price at which it was ordered to McPhillips Manufacturing Company.

"6. On October 26, 1936, and at all times subsequent thereto McPhillips Manufacturing Company had complied with all laws and had paid for all licenses required to authorize it to manufacture its products and sell the same after being manufactured, except and unless the sales tax claimed herein was due.

"7. On February 23, 1937, the Legislature of Alabama enacted what is known as the Alabama sales tax by statute approved on that date which became effective on March 1, 1937.

"8. This is a bona fide dispute existing between McPhillips Manufacturing Company and respondents herein concerning the liability of said McPhillips Manufacturing Company for the said 2% claimed to be due on the amounts received by McPhillips Manufacturing Company on the said mill work delivered after March 1, 1937."

"Exhibit A
"Purchase Order—Algernon Blair—Contractor
"Montgomery, Ala. October 26, 1936.
"To McPhillips Mfg. Co.,
"Mobile, Alabama.
"JOB Smithfield Court Housing Project.
"Birmingham, Alabama.

"Please ship the following to Algernon Blair at Birmingham, Ala.
"Ship via:
"It is agreed that shipment will be made as directed or right is reserved to cancel order. Important: Note instructions below for invoicing.

"Furnish all millwork, wood cabinets, screen doors, including priming, in strict accordance with plans and specifications, outside door frames built up, work tables completely assembled, including hardware and wire shelf, wall cabinets in kitchens to be completely assembled and primed at the factory.

"All millwork will be delivered f.o.b. trucks, job site. All doors will be delivered f.o.b. cars Birmingham.

"All provisions of the general contract affecting the work of this subcontract are made a part hereof. Particular attention is called to Articles 7, 11 and 18 to 24. A copy of the general contract was furnished you with the specifications.

"It is understood that we have the same power with respect to terminating your subcontract that the Government exercises over us under our contract with them.

"Omit Bldg. A deduct $1108.
"Charge—Millwork
"Price $49,660.00.
"f.o.b. See above
"Algernon Blair
"By H. A. Butler.

"Terms: 90% on the 10th of each month for materials delivered the preceding month.

"Please furnish invoices in triplicate "Order No. 30–BA { Send original to Montgomery, Ala. and two copies with bill of lading to B'ham. Ala.

"Show this order number on invoice, and on the outside of each package containing shipment.

"Purchase Order—Algernon Blair—Contractor.
"Montgomery, Ala. March 20, 1937.
"To McPhillips Mfg. Co.
"Address Mobile, Alabama.
"JOB. Smithfield Ct. Housing Project.
"Birmingham, Alabama.

"Please ship the following to Algernon Blair at Birmingham, Ala.
"Ship via:
"It is agreed that shipment will be made on or before or right is reserved to cancel

order. Important: Note instructions below for invoicing.

"Your contract price is increased $57.60 for changing 96 scuttles at 60c each.

"This order is given with the understanding that no assignment of funds payable hereunder will be binding upon purchaser without his written acceptance.

"Price $
"f. o. b.
"Terms:

"Algernon Blair,
"HAB:B                By H. A. Butler.

"Make invoices in triplicate { Send original to Montgomery Send two copies and bill of lading to Birmingham, Alabama.

"Show this order number on invoices and on the outside of each package containing shipment. (Order No. 30–4 BA

"Purchase Order—Algernon Blair—Contractor.
"Montgomery, Ala. March 24, 1937.
"To McPhillips Mfg. Co.
"Address Mobile, Alabama.
"JOB Smithfield Ct. Housing Project.
"Birmingham, Alabama.

"Please ship the following to Algernon Blair at
"Ship Via:

"It is agreed that shipment will be made on or before or right is reserved to cancel order. Important: Note instructions below for invoicing.

"Your contract price is reduced $1,326.00 for furnishing wood doors of solid construction in lieu of veneered construction specified.

"Copy of the Government's Change Order regarding this is attached.

"This order is given with the understanding that no assignment of funds payable hereunder will be binding upon purchaser without his written acceptance.

"Price $
"f. o. b.
"Terms:

"Algernon Blair
"HAB:B—one          By H. A. Butler.

"Make invoices in triplicate.
"Send original to Montgomery
"Send two copies and bill of lading.
"To ———

"Show this order number on invoices and on the outside of each package containing shipment } Order No. 30–4–BA–A."

Paragraph 8 of the foregoing agreement between the parties appears to limit the controversy to the single question of complainants' liability for the two per cent. sales tax on the materials delivered and paid for subsequent to the effective date of the Sales Tax Act: that is to say, March 1, 1937.

The Attorney General, for himself, and for the Commissioner of Revenue of the State, concedes that the Sales Tax Act is not retroactive so as to bring within its scope material delivered and paid for prior to the effective date of the Act.

The trial court made and entered the following judgment or decree:

"This cause, now coming on to be heard, is submitted for final decree and declaratory judgment upon the bill as amended, the answer of the respondents to the bill as amended, and upon the agreed statement of facts; and, upon consideration thereof, it is ordered, adjudged, decreed and declared:

"1. That the sale by McPhillips Manufacturing Company to Algernon Blair for materials for use in the Smithfield Court Housing Project, under its contract dated October 26, 1936, was subject to the Alabama Sales Tax Act, approved February 23, 1937 (Acts Extra Session, 1936–37, page 125), as to deliveries under the sale contract made after the effective date of said statute.

"2. That the materials sold by McPhillips Manufacturing Company to Algernon Blair under said sale contract of October 26, 1936, are subject to the said Alabama Sales Tax Act.

"3. That the complainants pay the costs of this suit to be taxed by the register, for which execution may issue."

It is earnestly insisted by appellants, complainants in the court below, that the transaction of October 26, 1936, between McPhillips Manufacturing Company, the seller, and Blair, the buyer, which is set out in the agreed statement of facts, was a closed transaction. That a complete sale was made before the effective date of the Sales Tax Act; and it being conceded that the Act was not retroactive, the transaction is not subject to the tax provided in the Act.

The point is not without some difficulty and direct authority appears to be lacking.

Section 1 of the Sales Tax Act, General Acts, Extra Session, 1936–37, page 125, contains the following pertinent provisions: "(d) The term 'sale' or 'sales' includes installment and credit sales and the exchange of properties as well as the sale thereof for money, *every closed transaction constituting a sale.* * * * (i) * * .* Sales of building materials to contractors, builders or landowners for resale or use in the form of real estate are retail sales in whatever quantity sold."

Our attention is directed to certain provisions of the Uniform Sales Act, General Acts 1931, pages 570–591, Code 1940, Tit. 57, §§ 1–76, as an aid in determining the question here involved. Rule 1 of section 19 of the Uniform Sales Act, Code 1940, Tit. 57, § 25, rule 1, is as follows: "Where there is an unconditional contract to sell specific goods, in a deliverable state, the property in the goods passes to the buyer when the contract is made and it is immaterial whether the time of payment, or the time of delivery, or both, be postponed." Section 76 of this Act, page 590, Code 1940, Tit. 57, § 1, defines "specific goods" as goods identified and agreed upon at the time a contract to sell or a sale is made. Rule 5, section 19, General Acts 1931, page 575, declares: "If the contract to sell requires the seller to deliver the goods to the buyer, or at a particular place, or to pay the freight or cost of transportation to the buyer, or to a particular place, the property does not pass until the goods have been delivered to the buyer or reached the place agreed upon."

Section 1, General Acts 1931, page 570, Code 1940, Tit. 57, § 7, distinguishes between à *contract to sell* goods and a *sale* of goods, as follows: "(1) A *contract to sell goods* is a contract whereby the seller agrees to transfer the property in goods to the buyer for a consideration called the price. (2) A sale of goods is an agreement whereby the seller transfers the property in goods to the buyer for a consideration called the price."

In Section 285, page 23, of 24 Ruling Case Law is the following: "As a general rule if a sale is not of specific chattels, but something remains to be done to identify the subject matter or discriminate it from other property with which it is connected, the transaction is executory and no title will pass to the buyer. This rule is frequently applied in the case of a sale of a part of a bulk or mass, where the part sold is to be segregated; and also in the case of the sale of articles to be produced or manufactured." See, also, 55 Corpus Juris 542, section 544.

While in our own case of Foley v. Felrath, 98 Ala. 176, 13 So. 485, 486, 39 Am.St.Rep. 39, this Court said: "A sale has been defined to be 'a transfer of the absolute or general property in a thing for a price in money.' Benj. Sales, § 1. If anything remains to be done by either party to the transaction before delivery, as, for example, to determine the price, quantity, or identity of the thing sold, the title does not vest in the purchaser, and the contract is merely executory. If the sale is complete, and the goods perish without the fault of the seller, the purchaser is bound to pay the agreed price."

And in the case of Alabama National Bank v. Parker & Co., 146 Ala. 513, 40 So. 987, 988, this Court said: "The fertilizer having been bought by the defendants f.o.b. the cars at Albertville, the contract was executory until the commodity was delivered to the purchasers at the point of destination." This rule has been consistently followed in this State. Brown & Co. v. Adair & McCarty Bros., 104 Ala. 652, 16 So. 439; St. Louis Hay & Grain Co. v. American C. I. P. Co., 167 Ala. 442, 52 So. 904; Central of Georgia R. R. Co. v. Southern Ferro Concrete Co., 193 Ala. 108, 68 So. 981, Ann.Cas.1916E, 376. See, also, Williston on Sales Vol. 1, 2d Ed., p. 602, section 280–b; 55 Corpus Juris 559, section 566; 24 R.C.L. 45, section 308.

In view of the foregoing authorities, we are of the opinion that the contract here in question was not a closed transaction or sale when the purchase order was given by Blair and accepted by McPhillips Manufacturing Company.

Appellants also insist that to add the two per cent. sales tax to the price of the materials delivered after the effective date of the contract would impair the obligation of a contract, and constitute a denial of due process. To this we cannot agree. The existence of an executory contract between or among two or more individuals presents no obstacle to the right or power of the State to levy or impose a tax which may adversely affect the financial interest of either or any of the parties which may

have been acquired under or by reason of the mutual covenants of such parties to the contract. Increasing taxation or adding new taxes does not impair the obligation of a contract, although the law, as it existed at the time the contract was made, is a part of the contract. So, too, is the law with reference to the State's power of taxation, otherwise all contracts with reference to real estate would become void as to the tax upon the creation of an improvement district. The State has the power to tax, and the only contention here made by appellants is that the sales tax cannot apply to them because their contract antedates the law. The authorities are clearly opposed to such a theory. Wiseman v. Gillioz, 192 Ark. 950, 96 S.W.2d 459; National Ice & Cold Storage Co. v. Pacific Fruit Express Co., 11 Cal.2d 283, 79 P.2d 380; People v. McDuffie, 11 Cal.2d 296, 297, 79 P.2d 386; New York Rapid Transit Corp. v. City of New York, 275 N.Y. 258, 9 N.E.2d 858; City of Portland v. Portland R., L. & P. Co., 80 Or. 271, 156 P. 1058; Trustees of Cook's Estate v. Sheppard, Tex.Civ.App., 89 S.W.2d 1026; State ex rel. Froedtert Grain & Malting Co. v. Tax Commission, 221 Wis. 225, 265 N.W. 672, 267 N.W. 52, 104 A.L.R. 1478; Kehrer v. Stewart, 197 U.S. 60, 25 S.Ct. 403, 49 L.Ed. 663; Lake Superior Iron Mines v. Lord, 271 U.S. 577, 46 S.Ct. 627, 70 L.Ed. 1093.

We hold that all materials delivered and paid for under the terms of the contract here involved, after the effective date of the Alabama Sales Tax Act, are subject to said tax. The judgment of the lower court is therefore affirmed.

Affirmed.

GARDNER, C. J., and BOULDIN and FOSTER, JJ., concur.

On Rehearing.

LIVINGSTON, Justice.

Appellants earnestly insist that the opinion in this case does not determine the duty of the McPhillips Manufacturing Company in respect to the collection of the sales tax from Blair.

In this regard, the duty imposed on the McPhillips Manufacturing Company to collect the tax from Blair is made mandatory by the Sales Tax Act itself. General Acts 1936–37, Special Session, p. 139, section 24. The imposition and collection of the tax does not impair the obligation of the contract between the McPhillips Man-

ufacturing Company and Blair. That contract remains the same between the parties. Nothing is added to nor subtracted from it. The State simply adds a tax to the transaction. A tax paid by the buyer through the seller to the State, and under the mandate of the Act, must be collected by the seller.

The application for rehearing is therefore overruled.

GARDNER, C. J., and BOULDIN and FOSTER, JJ., concur.