508 P.2d 324

**TOWER PLAZA INVESTMENTS LIMITED,** a limited partnership, Burgbacher, Behrstock and Burgbacher, a co-partnership doing business as Park Central Shopping Center, Center Associates, Inc., an Arizona corporation, Tri-City Mall, Inc., an Arizona corporation, Malouf & Malouf Investment Co., Inc., an Arizona corporation, Alfred M. Tibshraeny, a married man dealing with his sole and separate property, Valley Fair Shopping Center, Inc., an Arizona corporation, and Westown Investment Corporation, an Arizona corporation, Petitioners,

v.

L. Waldo DeWITT, John M. Hazelett and Bob Kennedy as members of and as constituting the State Tax Commission of Arizona, and State Tax Commission, an agency of the State of Arizona, Respondents.

No. 11066.

Supreme Court of Arizona,
In Banc.

March 29, 1973.

Rehearing Denied May 15, 1973.

Gary K. Nelson, Atty. Gen. by Mary Z. Chandler, Asst. Atty. Gen., Phoenix, for respondents.

Snell & Wilmer by Robert C. Bates, Kenneth R. Reed, Edward Jacobson, Phoenix, for petitioners.

STRUCKMEYER, Justice.

This is a special action pursuant to Article 6, § 5(1), Constitution of Arizona, A.R.S., and Rules of Procedure for Special Actions, A.R.S. 17, seeking to prohibit respondents, members of the State Tax Commission of Arizona, from imposing certain real property rental taxes. Because substantial revenues of the State are involved, as well as the legal rights of petitioners as taxpayers, and, following the decision in Alvord v. State Tax Commission, 69 Ariz. 287, 213 P.2d 363 (1950), we accepted jurisdiction.

Collectively, petitioners are the owners of real property herein described as shopping centers. As landlords, they have entered into written leases, some as long as fifty years. After the execution of many of their leases, the State of Arizona, by Laws of 1967, Third Special Session, Ch. 3, amended its Transaction Privilege Tax Act, §§ 42–1314, subsec. (A) and 42–1361, to impose a tax on the business of leasing or renting real property. It is urged that the tax violates the Arizona and Federal Constitutions in that it has retroactive application.

In 1935, the Legislature of Arizona enacted the first transaction privilege tax. By what is now A.R.S. § 42–1309, there were levied "annual privilege taxes" measured by the amount or volume of business transacted by persons in the amounts to be determined by the application of rates

against values, gross proceeds of sales, or gross income. Section 42–1314, as amended by Laws of 1966, Ch. 23, § 1, and Laws of 1967, Third Special Session, Ch. 3, § 1, provides:

"A. The tax imposed * * * shall be levied and collected at an amount equal to two per cent of the gross proceeds of sales or gross income from the business upon every person engaging or continuing within this state in the following businesses:

* * * * * *

3. Leasing or renting for a consideration the use or occupancy of real property * * *."

By subsection B of § 42–1314, the tax exacted under paragraph 3 of subsection A did not apply to petitioners' business activities until December 1, 1972.

In addition, Arizona levies an educational excise tax at the rate of one percent on the privilege of leasing or renting real property, A.R.S. § 42–1361. Both taxes have been dealt with by petitioners as identical. There is, therefore, no question as to possible different treatment for the two taxes and reference will hereafter be made only to the transaction privilege tax.

■■■ The Arizona Transaction Privilege Tax is not a property tax, *see e. g.*, Terrell v. McDonald, 32 Ariz. 30, 32, 255 P. 485, 486 (1927); it is an excise tax on the privilege of engaging in an occupation. Gila Meat Co. v. State, 35 Ariz. 194, 197, 276 P. 1, 2 (1929). The tax is not upon sales, as such, but upon the privilege or right to engage in business in the State, although measured by the gross volume of business activity conducted within the State. Industrial Uranium Co. v. State Tax Commission, 95 Ariz. 130, 132, 387 P. 2d 1013, 1014 (1963), and cases cited.

■■■ A retroactive law, even today is often defined in the words used by Justice Story in Society for Propagation of the Gospel v. Wheeler, 22 F.Cas. pp. 756, 767 (No. 13,156) (C.C.D.N.H.1814):

"[E]very statute, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective * * *."

Petitioners state that this case "is an attempt by the Legislature to reach back and tax retroactively a completed transaction which was immune from taxation when consummated." They argue that although the taxes are measured by gross receipts received after the enactment of the statute, acknowledging that to this extent the statute is prospective, the actual incidence of the tax is the lease entered into prior to the enactment. Their conclusion is that since the leases were entered into prior to the enactment of the statute, there is created a new obligation in respect to transactions already past. We, however, do not agree.

■■■ The word "incidence," as it relates to taxation, is defined by Webster's Third International Dictionary as "3: the falling of a tax upon a person who is unable to shift it onto someone else and who therefore bears the money burden of the tax." In Arizona State Tax Comm. v. Garrett Corp., 79 Ariz. 389, 291 P.2d 208 (1955), we held that the legal incidence of the tax was on the person engaging in the business of selling tangible personal property at retail, and not upon the transaction, the sales. The incidence of the tax in the present case is upon petitioners, as landlords, and not upon the transactions out of which they acquire their gross receipts or income, the leases.

■■■ It is a general principle that a statute is not retroactive in application simply because it may relate to antecedent facts. Cox v. Hart, 260 U.S. 427, 435, 43 S.Ct. 154, 157, 67 L.Ed. 332, 337 (1922). In American Federation of Labor v. American Sash & Door Co., 67 Ariz. 20, 189 P. 2d 912 (1948), aff'd, 335 U.S. 538, 69 S.Ct. 258, 93 L.Ed. 222 (1949), in a proceeding

for a declaratory judgment to determine the constitutionality under the United States Constitution of the "right to work" amendment to the Arizona Constitution, we held:

> "The effect of appellants' argument is that persons by making contracts extending into the future may prevent the exercise of the police power by the state. The agreements in the record extend year after year unless terminated by thirty days' notice at the end of an annual period. It must be remembered that a statute is not retrospective from the mere fact that it relates to antecedent facts." 67 Ariz. at 39, 189 P.2d at 925.

■ That petitioners, as landlords, pay taxes on gross receipts or income received under leases entered into before the enactment of the tax, the antecedent facts, does not import retrospective operation. Other courts have held that an excise tax is not retroactive merely because it draws upon some antecedent fact for its operation. John McShain, Inc. v. District of Columbia, 92 U.S.App.D.C. 358, 205 F.2d 882 cert. denied, 346 U.S. 900, 74 S.Ct. 227, 98 L.Ed. 400 (1953); Neild v. District of Columbia, 71 U.S.App.D.C. 306, 110 F.2d 246 (1940); Bates v. McLeod, 11 Wash.2d 648, 120 P.2d 472 (1941).

■ For example, in John McShain, Inc. v. District of Columbia, supra, the tax was measured by the value of materials purchased by petitioner, a contractor who had entered into construction contracts prior to the enactment of the tax. The United States Court of Appeals, District of Columbia Circuit, in affirming the decision of the District of Columbia tax court, said:

> "Petitioner argues that assessment of any tax on the basis of these purchases impairs petitioner's rights under existing valid contracts, and is retrospective, discriminatory, and unconstitutional.
>
> This contention must fail. The personal property involved was purchased by petitioner subsequent to the passage of the statute. And it is the purchase (or use) itself, not the signing of construction contracts ultimately necessitating the purchase, which is the taxable event. It is irrelevant in the present connection that the construction contracts were made prior to the date of the Act: a statute is not necessarily objectionable as being retroactive if antecedent facts affect its operation." 205 F.2d at 883.

In the instant case, it is the receipt of rentals by the taxpayer, not the leases out of which the rentals arise, which is the taxable event. A taxable event is the realization of income. Helvering v. Horst, 311 U.S. 112, 115, 61 S.Ct. 144, 146, 85 L. Ed. 75, 77 (1940).

We do not think such cases as Jones v. Gordy, 169 Md. 173, 180 A. 272 (1935), and Comptroller of the Treasury v. Glenn L. Martin Co., 216 Md. 235, 140 A.2d 288, cert. denied, 358 U.S. 820, 79 S.Ct. 34, 3 L.Ed.2d 62 (1958), heavily relied upon by petitioners, on their facts are germane here. In Jones v. Gordy, the Maryland Legislature imposed a gross receipts tax very similar to the Arizona Transaction Privilege Tax. The Supreme Court of Maryland construed the act in question not to impose a tax, measured by receipts from sales received before the passage of the act, and held that the Maryland act did not have retrospective application.

In Comptroller of the Treasury v. Glenn L. Martin Co., the facts were that the Supreme Court of Maryland had previously decided in another case that certain purchases similar to those of Martin were not subject to the Maryland exaction. Thereafter, the Maryland Legislature in 1957 undertook to levy a tax measured by gross receipts retroactively to July 1, 1947. The Supreme Court of Maryland, in holding that the tax retroactively denied due process to Martin, said:

> " * * * Chapter 3 of the Acts of 1957 seeks to place a tax where none was imposed before and to reach transactions completed long before its enactment." 216 Md. at 258, 140 A.2d at 300.

■ The Arizona act does not seek to reach transactions completed before its enactment, for the contractual provisions of these leases require performance extending far into the future. It seeks to tax petitioners' occupation measured by that portion of petitioners' gross income from rentals under the leases accruing during the taxable year and not from receipts or income realized before the passage of the act. We hold, therefore, that § 42–1314, subsec. A does not deny due process of law in that it is a retroactive tax.

■ Petitioners also urge that the tax in question impairs the obligation of contracts, a violation of both the Arizona Constitution, Article 2, § 25, and the Federal Constitution, Article I, § 10, ¶ 1. It is argued that petitioners entered into valid contracts for the transfer of interests in property, and that the subsequent enactment of the Legislature seeks to tax these transfers. Petitioners here again rest their position on the premise that it is the lease which is the transaction being taxed, a postulate with which we are not in agreement.

The obligation of a contract is defined as the law or duty which binds the parties to perform their agreements, Home Bldg. & Loan Ass'n v. Blaisdell, 290 U.S. 398, 429, 54 S.Ct. 231, 237, 78 L.Ed. 413, 424, 88 A.L.R. 1481, 1490 (1934), and a contract is impaired when a party is deprived of the benefit of his contract by a law, Northern Pacific Ry. v. Minnesota ex rel. Duluth, 208 U.S. 583, 591, 28 S.Ct. 341, 343, 52 L. Ed. 630, 634 (1908). But, to have a constitutionally protected impairment, the law must act on the contract itself as distinguished from the property which is the subject of the contract. Clement National Bank v. Vermont, 231 U.S. 120, 34 S.Ct. 31, 58 L.Ed. 147 (1913), aff'g, State v. Clement National Bank, 84 Vt. 167, 78 A. 944 (1911).

In State v. Clement National Bank, supra, the statute required that every person having an interest bearing deposit in a national bank pay a tax to the state at the rate of 7/20 of one percent semi-annually upon the amount of the deposit. In answering the claim that the statute impaired the obligation of the contract, the Vermont Supreme Court said:

"It is claimed further that the statute is unconstitutional in that it impairs the vested rights of certain depositors under their contracts with the bank. It is said that the bank is under contract to pay one class of its depositors interest at the rate of three per cent per annum, and that the statute requires it to pay 7/10 of 1 per cent. to the state and permits it to pay 2 3/10 per cent. to the depositor in satisfaction of its agreement. The unsoundness of this claim is apparent from several cases already cited. Speaking generally, all property within the jurisdiction of the state is held subject to its right to impose new taxes, or to increase the rate or change the method of taxation. All contracts are made with reference to the taxing power of the state, and in subordination to it. * * * To impair the obligation of a contract, the statute must act upon the contract itself. Charles River Bridge v. Warren Bridge [36 U.S. 420], 11 Pet. 420, 578, 9 L.Ed. 773, 836. The statute under consideration acts upon the property which is the subject of the contract, and not upon the contract." 84 Vt. at 190, 78 A. at 953. (Citations omitted.)

In affirming, the Supreme Court of the United States said:

"Further objection is made that the statute interfered with existing contracts between the bank and its depositors, impairing their obligation. But this is clearly untenable. The statute did not act upon such contracts; it imposed a tax upon the property of depositors in the exercise of a power subject to which the deposits were made. North Missouri R. Co. v. Maguire, [87 U.S. 46], 20 Wall. 46, 61, 22 L.Ed. 287, 293." 231 U. S. at 143, 34 S.Ct. at 38, 58 L.Ed. at 159.

In Barwise v. Sheppard, 299 U.S. 33, 57 S.Ct. 70, 81 L.Ed. 23 (1936), the Court considered a statute of the State of Texas,

imposing a tax on the production of oil. Barwise and another, appellants, held land as trustees from which oil was produced under lease given in 1925, which fixed the lessors' royalty interest at ⅛ of all the oil produced. In 1933, a tax on oil production was imposed requiring the tax to be borne ratably by all parties, including royalty interests. The Supreme Court said in speaking of the contention that the Texas statute imposed a tax impairing the obligation of their contract with the lessee:

> "The taxing act does not purport to reach or affect any term of the lease." 299 U.S. at 40, 57 S.Ct. at 73, 81 L.Ed. at 27.

■ In the present case, the Arizona statute does not purport to reach or affect any term of petitioners' leases. As stated, it imposes a tax upon petitioners as landlords, the taxable event being the receipt of income measured by the gross receipts or income presently received from their business activities. In this respect it should be emphasized that the leases are not fully executed in the sense of performance of all the covenants. The terms of the contract are executory in that performance will be taking place for many years to come.

Petitioners rely on a number of cases from the Supreme Court of the United States. We do not, however, think they are applicable to the decision here. Rather, we think that a case such as Lake Superior Consol. Iron Mines v. Lord, 271 U.S. 577, 46 S.Ct. 627, 70 L.Ed. 1093 (1926), is controlling. There, Minnesota imposed a tax of six percent upon all royalties received in mining and removing ore from lands within the state. For many years the owners of lands containing beds of rich iron ores followed the practice of making long-term leases (ordinarily 50 years) to parties who agreed to mine the ore and pay the lessors a specified royalty. In upholding the constitutionality of the tax, the Court said:

> "Titles to all the lands and leases were obtained subject to the state's power to tax. If the statute now in controversy is within that power, it cannot impair the obligation of appellants' contracts; * * *." 271 U.S. at 581, 46 S.Ct. at 628, 70 L.Ed. at 1100.

The Supreme Court of Alabama well summarized the law in McPhillips Mfg. Co. v. Curry, 241 Ala. 366, 371–372, 2 So. 2d 600, 604 (1941):

> "Appellants also insist that to add the two per cent. sales tax to the price of the materials delivered after the effective date of the contract would impair the obligation of a contract, and constitute a denial of due process. To this we cannot agree. The existence of an executory contract between or among two or more individuals presents no obstacle to the right or power of the State to levy or impose a tax which may adversely affect the financial interest of either or any of the parties which may have been acquired under or by reason of the mutual covenants of such parties to the contract. Increasing taxation or adding new taxes does not impair the obligation of a contract, although the law, as it existed at the time the contract was made, is a part of the contract. So, too, is the law with reference to the State's power of taxation, otherwise all contracts with reference to real estate would become void as to the tax upon the creation of an improvement district. The State has the power to tax, and the only contention here made by appellants is that the sales tax cannot apply to them because their contract antedates the law. The authorities are clearly opposed to such a theory. Wiseman v. Gillioz, 192 Ark. 950, 96 S.W.2d 459; National Ice & Cold Storage Co. v. Pacific Fruit Express Co., 11 Cal.2d 283, 79 P.2d 380; People v. McDuffie, 11 Cal.2d 296, 297, 79 P.2d 386; New York Rapid Transit Corp. v. City of New York, 275 N.Y. 258, 9 N.E.2d 858; City of Portland v. Portland R., L. & P. Co., 80 Or. 271, 156 P. 1058; Trustees of Cook's Estate v. Sheppard, Tex.Civ.App., 89 S.W.2d 1026; State ex rel. Froedtert Grain & Malting

Co. v. Tax Commission, 221 Wis. 225, 265 N.W. 672, 267 N.W. 52, 104 A.L.R. 1478; Kehrer v. Stewart, 197 U.S. 60, 25 S.Ct. 403, 49 L.Ed. 663; Lake Superior Iron Mines v. Lord, 271 U.S. 577, 46 S.Ct. 627, 70 L.Ed. 1093."

We recognize the burdensome nature of the taxes of which petitioners complain and have lent a sympathetic ear to their problems, but finding no constitutional infirmities in the Legislature's exactions, we are compelled to deny their request for relief.

Petition ordered dismissed.

HAYS, C. J., CAMERON, V. C. J., and LOCKWOOD and HOLOHAN, JJ., concur.