IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| ROBSON RANCH QUAIL CREEK, LLC, a Delaware limited liability company, and LAWYERS TITLE OF ARIZONA, INC., as Trustee under its Trust No. 7916-T, | ) ) ) ) ) ) | 2 CA-CV 2006-0206 DEPARTMENT A O P I N I O N |
| Plaintiffs/Appellants, | ) ) | |
| v. | ) ) | |
| PIMA COUNTY, a political subdivision of the State of Arizona, ANN DAY, RAMON VALADEZ, SHARON BRONSON, RAYMOND J. CARROLL and RICHARD ELIAS, as members of the Board of Supervisors of Pima County, Arizona; CHARLES H. HUCKELBERRY, County Administrator of Pima County; and KATHLEEN M. CHAVEZ, Director, Pima County Wastewater Management Department, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants/Appellees. | ) ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20046106

Honorable Deborah Bernini, Judge

AFFIRMED IN PART,
REVERSED IN PART, AND REMANDED

Sacks Tierney P.A.
  By Marvin S. Cohen                                                    Scottsdale
                                          Attorneys for Plaintiffs/Appellants

DeConcini McDonald Yetwin & Lacy P.C.
  By Spencer A. Smith and Lisa Anne Smith                               Tucson
                                          Attorneys for Defendants/Appellees

---

H O W A R D, Presiding Judge.

¶1        Appellants Robson Ranch Quail Creek, LLC, and Lawyers Title of Arizona, Inc. (collectively, "Robson"), challenge the trial court's grant of summary judgment in favor of appellee Pima County and various officials thereof.  Robson argues Pima County's sewer connection fee ordinance, as amended in 2005, is subject to the reasonable relationship requirement of A.R.S. § 11-821, is unreasonable and discriminatory, and unconstitutionally impairs a 1998 contract between Robson and Pima County.  We affirm the trial court's grant of summary judgment on the impairment of contract claim.  But, finding the reasonable relationship requirement of § 11-821 applies, and finding a genuine issue of material fact exists regarding whether the fee reasonably relates to the burden imposed on Pima County by Robson's development, we reverse in part and remand the case.

## Background

¶2        When reviewing a trial court's grant of summary judgment, we view the evidence and reasonable inferences from it in the light most favorable to the nonmoving party. *Link v. Pima County*, 193 Ariz. 336, ¶ 12, 972 P.2d 669, 673 (App. 1998).  Pima County charges fees for connection to its sewerage system.  *See* Pima County Code

2

§§ 13.20.040 and 13.20.045. The County assesses the connection fee per "fixture unit equivalent." § 13.20.045(A)(1). Prior to amendment in 2005, the rate structure was two tiered. When an applicant or prior property owner constructed qualifying sewer improvements, the County assessed a discounted, "participating" rate. For all other units, it assessed a higher, "nonparticipating" rate. Each rate was a flat fee per fixture unit equivalent; thus, the discount for participating applicants was not based on the amount actually spent constructing sewer improvements.

¶3 In December 2005, the County amended § 13.20.045 and eliminated the words "participating" and "nonparticipating" in the fee ordinance. *See* Pima County Ordinance No. 2005-112 ("the 2005 ordinance"). Instead, there is now a flat fee per fixture unit equivalent for all residential applicants. § 13.20.045(A)(1). The construction of a qualifying sewer improvement entitles the applicant to a discount on connection fees. § 13.20.045(B)(1). But, unlike under the prior system, the discount is tied to the actual cost of construction. "Once the aggregate connection fee discounts received for an area under development exceed the net construction cost of the qualifying public sewer conveyance improvement . . . , no further connections within the area under development shall receive connection fee discounts based on the construction of that qualifying public sewer improvement." § 13.20.045(B)(2).

¶4 Robson is the current developer of Quail Creek Resort Community in Sahuarita. The County adopted a specific plan in 1989 entitling Emerald Homes, then the developer of Quail Creek, to construct up to 5,000 homes on the specific plan property.

3

Pursuant to a 1989 agreement, Emerald Homes constructed an off-site sewerage system to serve Quail Creek. It also developed a portion of the specific plan property.

¶5        In 1997, Saddlecreek Enterprises, LLC, acquired the Quail Creek property and, in 1998, entered into an agreement with the County ("the 1998 agreement") to construct "an extension of the public sewerage system." The parties agree that, as a successor in interest to Saddlecreek, Robson is now a party to this agreement.

¶6        In 1999, Robson acquired the portion of the specific plan property that had not yet been sold to third parties, and before August 2000, it also acquired adjacent property that was not part of the 1989 specific plan. Sahuarita annexed both the specific plan property and the adjacent property after entering into a development and pre-annexation agreement with Robson. Sahuarita adopted an amended specific plan in October 2000 spreading development of Quail Creek over the original specific plan property and some of the adjacent property without increasing the limit of 5,000 homes included in the original specific plan.

¶7        For Robson to develop the property that was not part of the 1989 specific plan, the County required it to enter into sewer service agreements characterizing the lots on that property as nonparticipating for purposes of sewer connection fees. Believing these lots should have been participating, Robson sued the County in November 2004, claiming that applying the nonparticipating rate was contrary to Arizona statutes and

4

unconstitutional. The trial court granted the County summary judgment on these claims, and Robson does not challenge those rulings on appeal.[1]

¶8        Prior to those rulings, the County had passed the 2005 ordinance amending § 13.20.045. Also prior to those rulings, and based on a stipulation of the parties, Robson filed an amended complaint, adding challenges to the 2005 ordinance. Robson alleged that the 2005 ordinance violated state law and unconstitutionally impaired the contractual relationship established in the 1998 agreement. The County again moved for summary judgment, which the trial court granted. After the court entered final judgment in favor of the County, Robson appealed.

## Applicability of A.R.S. § 11-821

¶9        Robson argues the trial court erred by concluding A.R.S. § 11-821 does not require sewer connection fees imposed on developers to "bear a reasonable relationship to the burden imposed on the county." § 11-821(D)(4)(b). We review this issue de novo. *See Stein v. Sonus USA, Inc.*, 214 Ariz. 200, ¶ 3, 150 P.3d 773, 774 (App. 2007) (applicability of statute reviewed de novo); *Bothell v. Two Point Acres, Inc.*, 192 Ariz. 313, ¶ 8, 965 P.2d 47, 50 (App. 1998) (propriety of summary judgment reviewed de novo).

---

[1]In a footnote in its opening brief, Robson argues that some of its claims for refund of payments made at the nonparticipating rate are not barred by the statute of limitations, as the trial court had ruled they had been, and "should be reinstated" if we find that the reasonable relationship test in A.R.S. § 11-821 applies. But Robson's arguments on appeal concern only the trial court's rulings with respect to the 2005 ordinance. Accordingly, we do not address the trial court's other rulings.

¶10 The parties dispute the standard by which the validity of the ordinance must be measured. Robson argues § 11-821 requires the fees to bear a reasonable relationship to the burden imposed on the County by the particular development. The County, on the other hand, argues that, instead of applying the reasonable relationship requirement, we must uphold the 2005 ordinance unless it is arbitrary or not rationally related to a legitimate public interest. *See Home Builders Ass'n of Cent. Ariz. v. City of Scottsdale*, 187 Ariz. 479, 482, 930 P.2d 993, 996 (1997) (municipality's generally applicable land use regulations are legislative decisions and will be upheld unless "arbitrary and without a rational relation to a legitimate state interest"). But an ordinance that conflicts with a statute is invalid. *See id.* (analyzing ordinance to determine "whether the fee conferred a benefit as required by the statute"); *City of Casa Grande v. Ariz. Water Co.*, 199 Ariz. 547, ¶ 9, 20 P.3d 590, 593 (App. 2001) (ordinance that conflicts with statute is invalid). Accordingly, we analyze whether the 2005 ordinance complies with § 11-821.

¶11 The legislature added the relevant portions of § 11-821 in 1998 as part of the Growing Smarter Act. 1998 Ariz. Sess. Laws, ch. 204, § 7. Section 11-821(D) requires a county's comprehensive long-term plan to include, among other things:

> 4. A cost of development element that identifies policies and strategies that the county will use to require development to pay its fair share toward the cost of additional public facility needs generated by new development, with appropriate exceptions when in the public interest. This element shall include:
>
> (a) A component that identifies various *mechanisms* that are allowed by law and that can be used to fund and finance additional public services necessary to serve the

development, including bonding, special taxing districts, development fees, in lieu fees and facility construction, dedications and privatization.

(b) A component that identifies policies to ensure that any *mechanisms* that are adopted by the county under this element result in a beneficial use to the development, *bear a reasonable relationship to the burden imposed on the county to provide additional necessary public facilities to the development* and otherwise are imposed according to law.

(Emphases added.)

¶12 "The primary goal of statutory construction is to give effect to the intent of the legislature." *Cornman Tweedy 560, LLC v. City of Casa Grande*, 213 Ariz. 1, ¶ 8, 137 P.3d 309, 311 (App. 2006). We begin with the plain language of the statutes; if the language is clear and unambiguous, we need not resort to other methods of statutory construction. *Wells Fargo Credit Corp. v. Tolliver*, 183 Ariz. 343, 345, 903 P.2d 1101, 1103 (App. 1995). But, if the statutory language is ambiguous, "we look to the 'rules of statutory construction.'" *Stein*, 214 Ariz. 200, ¶ 3, 150 P.3d at 774, *quoting Lewis v. Ariz. Dep't of Econ. Sec.*, 186 Ariz. 610, 614, 925 P.2d 751, 755 (App. 1996). And, in the case of statutory ambiguity, we also "consider the statute's context; its language, subject matter, and historical background; its effects and consequences; and its spirit and purpose." *Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264, 268, 872 P.2d 668, 672 (1994).

¶13 The plain language of § 11-821(D)(4)(b) requires a county to "identif[y] policies to ensure that any mechanisms that are adopted by the county under this element . . . bear a reasonable relationship to the burden imposed on the county to provide additional necessary public facilities to the development." Although the statute does not specifically

7

list sewer connection fees as one of the mechanisms under the statute, the County admits it had identified sewer connection fees as a funding mechanism in its comprehensive plan. And the sewer connection fees "fund and finance additional public services necessary to serve the development," bringing them within the language of the statute. § 11-821(D)(4)(a). Therefore, by its plain language, § 11-821 applies to those fees.

¶14 The County argues that, because it assessed sewer connection fees under A.R.S. § 11-264 before the legislature added the relevant language to § 11-821, the fees were not "adopted" under that latter statute and are thus not subject to it. Section 11-264(A) permits a county to "operate a sewage system . . . and charge fees and levy taxes therefor."

¶15 But § 11-821 is not a fee-authorizing statute. *See* § 11-821(H)(1) ("This section does not authorize . . . [t]he imposition of dedications, exactions, fees or other requirements that are not otherwise authorized by law."). Instead, it requires a county to *identify* certain funding "mechanisms that are allowed by law." § 11-821(D)(4)(a). Sewer connection fees are "mechanisms that are allowed by law," *id.*, specifically, § 11-264(A). Although the County has long assessed sewer connection fees, it now has properly "adopted" them as a funding mechanism, making them subject to the requirements of § 11-821(D)(4).

¶16 The County next argues that § 11-821 requires no more than the development of "a plan that includes various elements to plan for growth" and that, by developing "a strategy to assure that the fees are reasonably related to the County's need to provide

8

services to support development in the County," it has complied with § 11-821, without regard to whether the plan is effective. But the statutory language shows that the legislature intended funding mechanisms adopted under § 11-821(D)(4) to be reasonably related to the burden imposed on counties by the development. If the County's strategy to "ensure" a reasonable relationship were not required to actually result in a reasonable relationship, § 11-821(D)(4)(b), the statutory requirement would be meaningless. *See Associated Aviation Underwriters v. Wood*, 209 Ariz. 137, ¶ 141, 98 P.3d 572, 613 (App. 2004) ("In construing statutes, 'courts should give meaning to all the language used in a statute and avoid an interpretation that renders a term either duplicative or meaningless.'"), *quoting Phoenix Newspapers, Inc. v. Superior Court*, 180 Ariz. 159, 162, 882 P.2d 1285, 1288 (App. 1993).

¶17 Even if the statute were deemed ambiguous, the legislative history of the Growing Smarter Act and the statutory context support our interpretation that § 11-821's effect is not limited to planning. The relevant provisions of § 11-821 were added in 1998 by the Senate Appropriations Committee. *Senate Comm. on Appropriations Amendments to HB 2361*, 43d Leg., 2d Reg. Sess. (Ariz. Apr. 23, 1998). A memorandum prepared for the full Senate after the Appropriations Committee adopted that amendment stated that the bill would "[r]equire[] that any financing and fee mechanisms . . . bear a reasonable relationship to the burden imposed on the municipality and are otherwise currently authorized by law." Memorandum from Ariz. Senate Research Staff to Members of the Senate (Apr. 23, 1998). The final Senate Fact Sheet for HB 2361 included the identical language, except that it referred to counties as well as municipalities. *Senate Fact Sheet for*

9

*HB 2361*, 43d Leg., 2d Reg. Sess. (Ariz. June 4, 1998); *cf. State ex rel. Ariz. Dep't of Revenue v. Capitol Castings, Inc.*, 207 Ariz. 445, ¶ 19, 88 P.3d 159, 163 (2004) (citing Senate Fact Sheet). Both of these statements support Robson's position that § 11-821(D)(4)(b) imposes a reasonable relationship requirement and requires more than a plan.

¶18        Furthermore, we must read § 11-821 together with other statutes on the same subject matter "to determine legislative intent and to maintain harmony." *Goulder v. Ariz. Dep't of Transp.*, 177 Ariz. 414, 416, 868 P.2d 997, 999 (App. 1993), *aff'd*, 179 Ariz. 181, 877 P.2d 280 (1994). Both § 11-821 and A.R.S. § 9-461.05, its municipal analogue, were adopted as part of the Growing Smarter Act in 1998. 1998 Ariz. Sess. Laws, ch. 204, §§ 2, 7. Section 9-461.05(D)(4)(b) mirrors § 11-821(D)(4)(b), requiring the general plan for certain municipalities to have a "cost of development element" that includes "[a] component that identifies policies to ensure that any mechanisms that are adopted by the municipality under this element . . . bear a reasonable relationship to the burden imposed on the municipality to provide additional necessary public services to the development."

¶19        The county and municipal development fee statutes contain similar requirements. In 2000, as part of the Growing Smarter Plus Act, the legislature repealed the prior county development fee statute and enacted A.R.S. § 11-1102 in its place. 2000 Ariz. Sess. Laws 4th Spec. Sess., ch. 1, §§ 19-20. Section 11-1102(B)(4) requires that "[t]he amount of any development fees must bear a reasonable relationship to the burden of capital costs imposed on the county to provide additional necessary public services to the

development." It requires a reasonable relationship, not merely a plan to ensure such a relationship. This language is very similar to that of A.R.S. § 9-463.05, which our supreme court interpreted in *Home Builders* as requiring that municipal development fees actually bear a reasonable relationship to the burden imposed on the municipality by the developer. 187 Ariz. at 483, 930 P.2d at 997. By including the "reasonable relationship" language in all these statutes, the legislature demonstrated its intent that, when a municipality or county charges a fee of a developer under these statutes, that fee must in fact reasonably relate to the burden the development imposes on the municipality or county. Thus, the statutory context provides further support for the conclusion that the reasonable relationship test, and not just a planning requirement, applies to the sewer connection fees in this case.

¶20         Based on the statute's express mandate, we hold that, where a county adopts a funding mechanism identified under § 11-821(D)(4), that mechanism must "bear a reasonable relationship to the burden imposed on the county to provide additional necessary public facilities to the development." Because the County's sewer connection fees are a funding mechanism under this statute, the fees are subject to the reasonable relationship requirement.

¶21         The parties dispute whether the statute requires that the fees reasonably relate to the burden on the County in providing services to Quail Creek specifically or to development in general. The County contends that the reference in § 11-821(D)(4) to "policies and strategies that the county will use to require development to pay its fair share toward the cost of additional public facility needs generated by new development" means

11

the fees must only reasonably relate to the burden imposed by development in general. But the relevant portion of the statute specifically requires that "any mechanisms that are adopted by the county under this element . . . bear a reasonable relationship to the burden imposed on the county to provide additional necessary public facilities to *the development*." § 11-821(D)(4)(b) (emphasis added). Thus, the statute's plain language supports Robson's position that any mechanism adopted under the statute must reasonably relate to the burden imposed by the particular development.

**¶22** Furthermore, the supreme court in *Home Builders*, interpreting the municipal development fee statute, stated: "[Section] 9-463.05 requires that the fee result in a benefit to *the developer*." 187 Ariz. at 483, 930 P.2d at 997 (emphasis added). The court also stated, in discussing the test the legislature had adopted:

> That standard requires first that the exaction imposed on the developer be factually related to the need for public services *created by the proposed development.* Second, the nature and extent of the exaction must bear a reasonable relationship to that portion of the public burden *created by the proposed development.*

*Id.* (emphases added). Based on the plain language of § 11-821(D)(4)(b) and the supreme court's interpretation of a statute with similar language in *Home Builders*, we conclude that § 11-821(D)(4)(b) requires a reasonable relationship to the burden imposed on the County by the particular development.

**¶23** We address now whether Robson presented sufficient evidence to raise a genuine issue of material fact regarding the reasonable relationship of the sewer connection fees to the burden imposed on the County by Quail Creek. Summary judgment is only

appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(c)(1), 16 A.R.S., Pt. 2. A trial court should only grant a summary judgment motion "if the facts produced in support of the claim . . . have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim." *Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990).

¶24 We conclude Robson presented sufficient evidence to raise a genuine issue of material fact concerning the sewer connection fees. It presented an audit of Pima County Wastewater Management stating that revenue paid to offset the costs of added capacity was being used to service debt attributable to user costs, not costs of new development. Robson's expert avowed, based on the audit, a 2005 study adopted by the County, and other information, that total revenue from sewer connection fees over the next ten years would exceed growth-related costs by between $246 million and $345 million. If true, reasonable people could find that revenue from sewer connection fees has been substantially more than necessary to offset development costs and that it has in fact been used to subsidize user costs. And if, in general, the revenue from connection fees exceeds growth-related costs, a jury could conclude that the revenue from connection fees for Quail Creek exceeds Quail Creek's impact. Additionally, Robson showed that its predecessor constructed sewer infrastructure to serve Quail Creek, which would allow reasonable people to conclude that the revenue from connection fees paid by Robson would exceed the amount necessary to offset connection-related costs attributable to Quail Creek. Thus, we remand the case for

13

a determination of whether the fee bears a reasonable relationship to the burden imposed on the County by Quail Creek.

¶25		Although we remand this case, we note that the 2005 ordinance, as a legislative decision, is entitled to deference. The basis for it "must stand unless shown to be without factual support." *Home Builders*, 187 Ariz. at 482, 930 P.2d at 996. Moreover, § 11-821(D)(4)(b) requires only a reasonable relationship, not an exact fit. As noted above, however, Robson presented evidence, based on a fee study adopted by the County, that the revenue from connection fees will substantially exceed the money the County needs to offset the burden caused by Quail Creek. Thus, a genuine issue of material fact exists and summary judgment was inappropriate.[2]

## Impairment of Contract

¶26		Robson next argues the 2005 ordinance unconstitutionally deprived it of the benefit of the 1998 agreement because Robson is no longer entitled to the "participating" rate and it now has to pay higher fees. We review this issue de novo. *See In re Estate of Dobert*, 192 Ariz. 248, ¶ 18, 963 P.2d 327, 331 (App. 1998) (reviewing contract clause

---

[2]Because we conclude that the requirements of § 11-821 apply to sewer connection fees in this case, we do not address Robson's argument that the common law imposes a standard of reasonableness and nondiscrimination and that the fees violate that standard. *See Jung v. City of Phoenix*, 160 Ariz. 38, 40-41, 770 P.2d 342, 344-45 (1989) (municipality's fees for water service to nonresidents must be reasonable, and discrimination in rates must have reasonable basis). That standard is less stringent than the statutory standard, which requires a reasonable relationship to the burden of providing additional necessary facilities to the development.

challenge to statute de novo); *Bothell v. Two Point Acres, Inc.*, 192 Ariz. 313, ¶ 8, 965 P.2d 47, 50 (App. 1998) (propriety of summary judgment reviewed de novo).

¶27     The Contract Clause of the United States Constitution prohibits states from passing laws impairing the obligation of contracts. U.S. Const. art. I, § 10; *see also* Ariz. Const. art. II, § 25. When analyzing a challenge to a law based on the Contract Clause, we ask whether the law substantially impairs a contractual relationship. *Energy Reserves Group, Inc. v. Kan. Power & Light Co.*, 459 U.S. 400, 411, 103 S. Ct. 697, 704 (1983); *McClead v. Pima County*, 174 Ariz. 348, 359, 849 P.2d 1378, 1389 (App. 1992). If the law "constitutes a substantial impairment, the State, in justification, must have a significant and legitimate public purpose behind the regulation." *Energy Reserves Group*, 459 U.S. at 411, 103 S. Ct. at 704; *see also Phelps Dodge Corp. v. Ariz. Elec. Power Coop., Inc.*, 207 Ariz. 95, ¶ 101, 83 P.3d 573, 597 (App. 2004).

¶28     "[A] contract is impaired when a party is deprived of the benefit of his contract by a law." *Tower Plaza Invs. Ltd. v. DeWitt*, 109 Ariz. 248, 252, 508 P.2d 324, 328 (1973). But, although "[t]otal destruction of contractual expectations is not necessary for a finding of substantial impairment, . . . state regulation that restricts a party to gains it reasonably expected from the contract does not necessarily constitute a substantial impairment." *Energy Reserves Group*, 459 U.S. at 411, 103 S. Ct. at 704 (citation omitted). "[T]he reasonable expectations of the complaining party to the contract play an 'important role' in deciding whether a law substantially impairs that contract." *Baker v. Ariz. Dep't*

15

*of Revenue*, 209 Ariz. 561, ¶ 17, 105 P.3d 1180, 1185 (App. 2005), *quoting Estate of Dobert*, 192 Ariz. at 253, 963 P.2d at 332.

¶29 The 1998 agreement provides, in relevant part:

> 5.1 Applicant shall pay all fees as provided for in Pima County Ordinance No. 1996-18, as amended, and all other applicable fee ordinances in effect at the time of application for sewer service. . . .
>
> 5.2 This development is Participating for purposes of connection fee assessment.

Robson contends the 2005 ordinance "destroy[ed] the long-term connection fee structure" because it eliminated the participating class of applicant. It argues this substantially impaired the contractual relationship because the prior structure ensured that "[t]he fee agreed to at the time was specifically tied to the cost of providing new treatment capacity."

¶30 Under the 1998 agreement, Robson reasonably could have expected to receive a discounted connection fee based on its construction of sewer improvements. But the agreement did not provide a specific discounted rate; rather, it contemplated that the connection fee ordinance could be amended, as it was in 2005. Additionally, the contract provided that the fee assessed would be based on "all other applicable fee ordinances in effect at the time of application for sewer service." Robson concedes the parties contemplated that the fee might increase.

¶31 The 2005 ordinance provides a discounted rate based on the actual cost incurred in constructing qualifying sewer improvements. Although the 2005 ordinance eliminated the two-tiered, participating/nonparticipating system, it still provides a discount

16

for applicants who construct qualifying sewer improvements. Because the agreement provided that the fee would be based on the original ordinance, as amended, and on other fee ordinances, which are subject to change, Robson could not have reasonably expected that the method of calculating the discount would necessarily stay the same. *See Smith v. City of Phoenix*, 175 Ariz. 509, 514, 858 P.2d 654, 659 (App. 1992) (agreement providing that municipal judge's salary was established by ordinance did not "objectively manifest[] assent of the parties that the method of calculating his salary would remain fixed throughout his term").

**¶32** Although Robson makes much of the use of the word "participating" in the 1998 agreement, Pima County Code § 13.20.045(B)(5) provides that, where a pre-existing agreement provided for a particular lot to be "participating," that lot now receives a discount under § 13.20.045(B). Thus, although the "participating" terminology no longer exists, the discount does.

**¶33** Robson contends the fee structure prior to the 2005 ordinance provided applicants not merely a discount, but an incentive, by providing discounts that exceeded the cost of constructing qualifying sewer improvements. But the 1998 agreement did not state or imply that one of its goals was to provide the developer an incentive. And neither the agreement nor the prior connection fee structure expressly provided that the discount would always exceed the cost of construction. Because the agreement provided that connection fees would be subject to the ordinance as amended, we cannot conclude that the parties contemplated the discount would continue to exceed the cost of construction.

17

¶34     Robson also argues that the use of the word "participating" in the 1998 agreement shows the parties agreed that the County would use the revenue from sewer connection fees to offset the "cost of providing new treatment capacity." But nothing in the 1998 agreement bound the County to use the fee revenue for a particular purpose. Instead, the agreement set forth the obligations of the parties to each other. *See Tower Plaza Invs. Ltd.*, 109 Ariz. at 252, 508 P.2d at 328 ("The obligation of a contract is defined as the law or duty which binds the parties to perform their agreements."). Thus, although we have concluded that the sewer connection fees must reasonably relate to the burden imposed on the County by the particular development, as A.R.S. § 11-821(D)(4)(b) requires, we do not conclude that the 1998 agreement gave rise to any expectations regarding how the County would use the fee revenue.

¶35     Under the 1998 agreement, Robson could not have reasonably expected a particular discount nor that the County would use the fee revenue in a particular way. Although the 2005 ordinance changed the calculation of the discount, it still provides applicants a discount for constructing qualifying sewer improvements. Accordingly, the 2005 ordinance did not substantially impair Robson's rights under the 1998 contract. *See Tower Plaza Invs. Ltd.*, 109 Ariz. at 252, 508 P.2d at 328. Because the ordinance did not unconstitutionally impair Robson's rights, we need not address whether any impairment would be justified by a valid exercise of the County's police power.

## Disposition

¶36 For the foregoing reasons, we reverse the trial court's grant of summary judgment on Robson's claims for declaratory and monetary relief under the 2005 ordinance based on the reasonable relationship requirement in § 11-821(D)(4)(b). We affirm the court's grant of summary judgment in favor of Pima County on Robson's impairment of contract claim. We remand the case for further proceedings consistent with this decision. Because the County is no longer the successful party in this action, we vacate the award of attorney fees in its favor.

_____
JOSEPH W. HOWARD, Presiding Judge

CONCURRING:

_____
JOHN PELANDER, Chief Judge

_____
GARYE L. VÁSQUEZ, Judge