This appeal involves the interpretation of section 12-17-4 of the Alabama Code as amended by section 3 (b)(2) of Act No. 695, Reg.Sess. (1977). This statute, which is part of the Judicial Article Implementation Act (the Implementation Act), § 12-17-1
to -4, Ala. Code 1975, basically provides for state assumption of retirement and other employment benefits of circuit court and district court support personnel.
An action was filed in the Montgomery County Circuit Court by appellees, Morris E. Oden and Lewis D. Wooley, former Jefferson County court employees, who had become state employees by virtue of the Implementation Act. The complaint charged that section 12-17-4 (b)(2)[1] is unconstitutional as a violation of due process and equal protection. This statute provides benefits for those employees of circuit and district courts not previously covered by retirement plans. After a hearing on the merits, the trial court concluded that the statute was violative of the due process clause of the fourteenth amendment to the United States Constitution since it failed to provide clearly ascertainable and defined standards for determining the contribution necessary by the state and the employee. The court further concluded that the statute violated the equal protection clause of the fourteenth amendment in that it required employees in appellees' class to contribute amounts greater than that required in the past for certain other classes of employees to gain retirement credit under the Employees' Retirement System (ERS). The court then enjoined ERS from "exercising any of the rights, powers and duties" granted it under section 12-17-4 (b)(2).
There is substantial agreement between the parties as to the material facts of the *Page 6 
case. Appellees, Oden and Wooley, became employees of the state on October 1, 1977, by virtue of the Implementation Act. Prior to that date, they had been employees of Jefferson County, Alabama, assigned to the circuit court. Mr. Oden had been employed since 1948, and Mr. Wooley since 1959. Under the Implementation Act, appellees, not being members of a local retirement system, automatically became members of ERS. §12-17-4 (a), Ala. Code 1975.
Under section 12-17-4 (b)(2), ERS was required to grant prior service credit to appellees to a maximum of five years. The statute authorized the comptroller to pay ERS "the cost of granting such prior service credit in such amounts as determined to be necessary . . . for both employer and employee contributions into the employees' retirement fund on account of such eligible employee under the same rules and regulations applicable to other members of the employees' retirement system." In addition to the five-year prior service credit paid for by the state, the statute provided that an eligible employee may purchase additional service credit, not to exceed actual years served by direct payment to ERS "in such amounts as determined to be necessary by the employees' retirement system for the prior service credit desired." Such amounts had to be paid before January 1, 1978.
Appellant, ERS, determined that the "contribution" requirements of section 12-17-4 (b)(2) referred to and incorporated the percentage rates of state and employee contributions determined by the most recent ERS actuarial valuation. The Thirty-First Annual Valuation, performed in accordance with sections 36-27-23 (m)-(p) and section 36-27-24, required that, normally, the State of Alabama contribute to ERS 9.63% of payroll, while employee members contribute 5% of their gross salary. The result of the sum of these percentage rates (14.63%) multiplied by the gross salary of member employees is the amount required annually to fund the retirement system.
This formula was used to determine the state's contribution for the "free" five-year prior service credit provided by the statute. More importantly, this formula (14.63% X salary X years credit desired) was used to determine the amount required of appellees to purchase additional prior service credit. This meant that Oden would have to pay $41,820.53, and Wooley would have to pay $34,394.18 in order to receive their additional credit. The statute required that this entire amount of additional contribution be paid within ninety days of October 1, 1977.
The trial court's determination that section 12-17-4 (b)(2) violates the equal protection clause of the fourteenth amendment is premised on section 36-27-41 (a), which provides:
 (a) Any employee who was in service on October 1, 1974, whose membership in the employees' retirement system of Alabama was contingent upon his own election and who elected not to become a member, may apply for and be admitted to membership with all prior service credit, as otherwise provided for in article 1 of this chapter, at any time prior to October 1, 1976; provided, that said employee pays to the secretary-treasurer of the employees' retirement system of Alabama on or before October 1, 1976, a sum equal to the total contributions which he would have made as a member during his service as an employee from October 1, 1945, or the date of entry of his employing unit, to the date of his application for membership, plus compound interest of eight percent on such contributions.
The trial court held that, although the retirement benefits available to appellees under section 12-17-4 (b)(2) were substantially the same as the benefits available to employees eligible under section 36-27-41, the statutory scheme, as interpreted by ERS, resulted in harsh and unequal treatment of appellees, since they were required to pay excessively larger sums of money for their prior service credit.
Only minimum rationality must be shown between a state's objective and the classification where there is no "fundamental right" or "suspect class" involved. See McDonald v. Board ofElection, 394 U.S. 802, 809, 89 S.Ct. 1404, 22 L.Ed.2d 739 *Page 7 
(1969). In respect to economic regulation, as here, the Supreme Court has said:
 The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.
McGowan v. Maryland, 366 U.S. 420, 425-26, 81 S.Ct. 1101, 1105,6 L.Ed.2d 393 (1961).
In the instant case, there seems to be a valid distinction in the classes of employees involved. Employees under section12-17-4 are former employees of the various counties in the state, while employees under section 36-27-41 are persons who were in the service of the state on October 1, 1974. Moreover, although prior service credit could be purchased less expensively under section 36-27-41 (the amount which would have been paid as a member during his service of as an employee from October 1, 1945 compounded at eight percent interest), no provision was made for a "free" five-year service credit as allowed section 12-17-4 (b)(2) employees. Regardless of what may be thought of the wisdom or desirability of this plan, it is within the province of the legislature to impose reasonable conditions upon the receipt of benefits under a statutory privilege, and the fourteenth amendment does not require that all classes be treated in an identical manner. See Williamsonv. Lee Optical, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563
(1955). Therefore, the difference in treatment of the two classes of employees is not a violation of equal protection.
The trial court further determined that section 12-17-4
(b)(2) is a void delegation of legislative power in violation of the due process clause of the fourteenth amendment, since the statute does not contain clearly ascertainable and defined standards, and in respect to appellees, was applied in an arbitrary and discriminatory manner.
The legislative intent as manifested in section 12-17-4
(b)(2) is to establish a plan whereby eligible employees are given a five-year retirement credit paid for entirely by the state. The plan also enables such employees, at their option and at their own expense, to obtain credit for past service in addition to the five years. The legislature did not specify a formula for computation of the cost of obtaining both the five-year credit and any additional prior service credit. However, the legislature did provide in the second sentence to section 12-17-4 (b)(2) that the cost of providing the five-year service credit is the sum of state and employee contributions as determined under the same rules and regulations applicable to other members of ERS. ERS has interpreted the legislative intent manifested in section 12-17-4 (b)(2) as requiring that the amount necessary to provide the benefits under the statute be computed pursuant to standards previously established in section 36-27-24 (d) which section provides that the percentage rates used to compute state and employee contributions are to be based upon annual valuations of ERS conducted by a consulting actuary. Interpretations of an act by the administrative agency charged with its enforcement, though not conclusive, are to be given great weight by a reviewing court.Buchanan v. State, 274 Ala. 592, 150 So.2d 200 (1962).
Furthermore, it is not constitutionally objectionable for the legislature to delegate to a board, commission, or administrative agency the duty of determining an amount necessary for a certain purpose. Norton v. Lusk, 248 Ala. 110,26 So.2d 849 (1946); Opinion of the Justices, 234 Ala. 555,176 So. 367 (1937). The specific amount may be determined by the agency in the exercise of its expertise and discretion pursuant to standards fixed by the legislature. Norton v. Lusk, supra.
And although the legislature may not delegate its power to make law, it may vest a considerable measure of discretionary authority in the agency charged with administering the enactment. Id. Cf. Marcet v. Board of Plumbers Examination Registration, 249 Ala. 48, 29 So.2d 333 (1947). Respecting *Page 8 
the degree of specificity in establishing standards to guide the administrative body in exercising such discretion, the United States Supreme Court has said:
 [T]he only concern of courts is to ascertain whether the will of Congress has been obeyed. This depends not upon the breadth of the definition of the facts or conditions which the administrative officer is to find but upon the determination whether the definition sufficiently marks the field within which the Administrator is to act so that it may be known whether he has kept within it in compliance with the legislative will.
. . . . .
 Only if we could say that there is an absence of standards for the guidance of the Administrator's action, so that it would be impossible in a proper proceeding to ascertain whether the will of Congress has been obeyed, would be justified in overriding its choice of means for effecting its declared purpose. . . .
Yakus v. United States, 321 U.S. 414, 425-26, 64 S.Ct. 660,88 L.Ed. 834, 849 (1944).
The legislature, and permissibly so, left the details of computing the specific amount required to provide the benefits under the statute to the agency with expertise in the area. The very nature of the benefits provided make it difficult to establish a fixed and simple formula by which to compute the amounts necessary to fund the system. The cost of providing benefits to an employee is not known until the employee dies. Therefore, the total cost to ERS, and accordingly, the contribution required of the state and the employee, is not known and must be estimated. Skilled and experienced actuaries are required to evaluate the assets and liabilities of ERS and to compute the proper level of funding required to preserve the system. The fact that employee and state contributions cannot be reduced to a certainty is due to the nature of the benefits provided and not to lack of specificity on behalf of the legislature in enacting the statute. Although the legislature provided for obtaining prior service credit, the benefits involved are the same as those presently afforded members of ERS. Accordingly, the cost to appellees of receiving prior service credit should be based upon contribution rates prevailing at the time the credit is given. Since the employees are presently paying for benefits to be received in the future, past contribution rates are immaterial. Although the cost to the individual appellees is substantial, ERS is duty bound to take action guaranteed to insure the integrity and solvency of the state employees' pension fund.
The legislature has expressed its will in a sufficient manner to guide ERS, particularly in light of previous standards established in section 36-27-24 (d), and to judge whether the actions of ERS have conformed with that will. With the dilemma facing our legislature in effectively dealing with the realities of our modern life and the problems posed by our complex society, this is all that is required.
The last sentence of section 12-17-4 (b)(2) providing for additional prior service credit is phrased somewhat differently than the second sentence. Although perhaps inartfully drafted, we cannot say that it fails for indefiniteness. Even though it only directs ERS to determine the cost to the employee of obtaining prior service credit according to what amount it determines to be necessary, section 12-17-4 (b)(2) read as a whole contemplates that such amounts are to be computed in the same manner as is the contribution required for the five-year service credit. A strained and disjointed construction of the statute would result from any other interpretation. The legislature intended to give all county court personnel assimilated into the state system a five-year service credit paid for by the state. Furthermore, if an eligible employee desired additional credit, he could purchase at his expense the credit desired within actual years of service. Essentially, the legislature has provided the same benefit, retirement credit for prior service, but with the cost of such benefit paid for by different parties, the state or the employee, depending on whether the benefit provided is the five-year service credit or additional prior *Page 9 
service credit. It seems unlikely that the contribution rate for obtaining prior service credit over and above the five years would be at a rate different than the rate for the five-year service credit. The benefits are the same.
Moreover, we cannot say that the determination of appellees' contribution was arbitrary and capricious. ERS relied upon the services of a consulting actuary, Mr. Donald M. Overholser, in computing such costs. Appellees argue that Mr. Overholser's computation of the cost to them was arbitrary because he did not conduct an actuarial study as to employees in the class as appellees in respect to factors such as age, sex, length of service, and health, and arrived at his conclusion as the result of a half-hour telephone conversation with Dr. Walsh, Deputy Secretary of ERS. However, Mr. Overholser testified that he spent a substantial amount of his time dealing with the actuarial problems of ERS and was familiar with the costs and assets of the agency. Moreover, he testified that the percentage rates used to compute appellees' cost did take into consideration factors such as age, health, life expectancy, etc.
Section 12-17-4 (b)(2) when read as a whole contemplates that the cost of obtaining the five-year service credit and additional prior service credit is to be computed in the same manner and at the same rate. Since the standards previously established by the legislature to guide the computation of the funding necessary to provide employee retirement credit are equally applicable to the computation of determining the funding necessary for the five-year service credit and additional prior service credit, the statute is not standardless and the computation of such amounts is not left solely to the arbitrary and capricious determination of ERS.
Accordingly, we conclude that section 12-17-4 (b)(2) is constitutional and the amount of appellees' contribution was determined within the authority constitutionally vested in ERS by the legislature. Therefore, the judgment of the circuit court is reversed; and an order upholding ERS's determination of the amounts required of appellees to obtain their prior service credit is herein rendered by this court.
REVERSED AND RENDERED.
TORBERT, C.J., and BLOODWORTH, MADDOX, FAULKNER, JONES, ALMON, SHORES, EMBRY and BEATTY, JJ., concur.
[1] Section 12-17-4 (b)(2) reads as follows:
 . . . BENEFITS FOR ELIGIBLE EMPLOYEES COVERED BY UNFUNDED LOCAL RETIREMENT PROGRAMS OR EMPLOYEES NOT PREVIOUSLY COVERED BY RETIREMENT PLANS. — Eligible employees who have participated in unfunded local retirement programs or who have not participated in retirement programs with units of local government shall be granted prior service credit by the employees' retirement system of Alabama, based on length of previous court employment, to a maximum of five years. The secretary-treasurer of the employees' retirement system of Alabama shall authorize and direct the comptroller to pay the cost of granting such prior service credit in such amounts as determined to be necessary, and the comptroller shall pay such amounts as necessary for both employer and employee contributions into the employees' retirement fund on account of such eligible employee under the same rules and regulations applicable to other members of the employees' retirement system. In addition to the five-year prior service credit described above, any eligible employee may purchase prior service credit, not to exceed actual years served, by direct payment to the employees' retirement system, within 90 days after October 1, 1977, in such amount as determined to be necessary by the employees' retirement system for the prior service credit desired.
§ 12-17-4 (b)(2), Ala. Code 1975.