Fourteen oil and gas producers filed similar suits challenging the constitutionality of Act No. 79-434, approved by the Alabama Legislature in its 1979 Regular Session, and seeking refunds of oil and gas severance taxes paid pursuant to the Act. The trial court held the Act to be unconstitutional. Ralph P. Eagerton, Jr., as Commissioner of Revenue, appealed. We reverse and remand.
Before the legislature enacted Act No. 79-434, the statute governing the amount of oil and gas severance tax was Code of 1975, § 40-20-2. That section in its relevant part read:
 (a) There is hereby levied, to be collected hereafter, as herein provided, annual privilege taxes upon every person engaging or continuing to engage within the state of Alabama in the business of producing or severing oil or gas as defined herein from the soil or the waters, or from beneath the soil or the waters, of the state for sale, transport, storage, profit or for use. The amount of such tax shall be measured at the rate of five percent of the gross value of said oil or gas at the point of production until October 1, 1973, at which time the rate of such tax shall decrease to four percent, which shall be the applicable rate thereafter.
 (b) The tax is hereby levied upon the basis of the entire production in this state, including what is known as the royalty interest, on which production the amount of such tax shall be a lien, regardless of the place of sale or to whom sold, or by whom used, or the fact that the delivery may be made to points outside the state; and the tax shall accrue at the time such oil or gas is severed from the soil or the waters, or from beneath the soil or the waters, and in its natural, unrefined or unmanufactured condition.
Code of 1975, § 40-20-8, dealt with the allocation and distribution of the taxes collected.
The caption of Act No. 434 states that its purpose is: "To amend Code of Alabama *Page 3 
1975, Sections 40-20-2 and 40-20-8, so as to increase the rate of tax; to provide further for the distribution of the proceeds of the tax; and to provide certain exceptions from the increased rate." Section 1 (a) of Act 79-434 provides:
 Code of Alabama 1975, § 40-20-2, is amended to read as follows:
 "§ 40-20-2. (a) There is hereby levied, to be collected hereafter, as herein provided, annual privilege taxes upon every person engaging or continuing to engage within the State of Alabama in the business of producing or severing oil or gas as defined herein, from the soil or the waters, or from beneath the soil or the waters, of the state for sale, transport, storage, profit, or for use. The amount of such tax shall be measured at the rate of six per centum of the gross value of said oil or gas at the point of production. All wells producing less than 26 barrels of oil per day shall be taxed at the rate of four per centum (4%) of the gross value of said oil or gas at the point of production. All wells that come into production after the effective date of this Act shall be taxed at the rate of four per centum (4%) of the gross value of said oil or gas at the point of production for a period of ten years after production begins. Ten years after production begins, such tax shall be then imposed at the rate of six per centum (6%) on such wells that go into production after the effective date of this Act. Provided, however, that said additional increase shall be limited to those oil and gas wells from between 15,000 and 15,800 feet in the smackover formation. . . ."
The primary issue in this appeal deals with the effect of the phrase which reads "said additional increase shall be limited to those oil and gas wells from between 15,000 and 15,800 feet in the smackover formation," (hereinafter the smackover provision) in Act No. 79-434.
Code of 1975, § 40-20-2 had previously imposed a 4% severance tax on statewide oil and gas production. The commissioner contends that Act No. 79-434, the amendatory Act, was intended to increase that rate from 4% to 6% statewide. The appellees, however, urge that because of the inclusion of the sentence which reads "said additional increase shall be limited to those oil and gas wells from between 15,000 and 15,800 feet in the smackover formation," the entire Act was intended only to impose an increase on the wells which were producing oil and gas from the smackover formation at the depth specified.
It is undisputed that the smackover formation underlies only twelve counties in Alabama and that that is an unchanging fact. It is also clear that at the time of the passage of the Act, the only production in the smackover formation from 15,000 to 15,800 feet in Alabama was in Escambia County. Thus the appellees urge that the increase from 4% to 6% was intended only to apply to those wells in the smackover formation at that depth, all of which were in Escambia County. Since the Act as so interpreted would only apply to one county, appellees contend that it is a local Act.
In Town of Loxley v. Rosinton Water, Sewer and FireProtection Authority, Inc., Ala., 376 So.2d 705 (1979) this Court said:
 In interpreting statutes the underlying consideration, always, is to ascertain and effectuate the intent of the legislature as expressed in the statutes. Employees' Retirement System of Alabama v. Head, 369 So.2d 1227 (Ala. 1979). While specific language used by the legislature is subject to explanation, such language cannot be detracted from, or added to. May v. Head, 210 Ala. 112, 96 So. 869
(1923). Furthermore, when the language of a statute is clear and unambiguous there is no room for judicial construction. Employees' Retirement System of Alabama v. Head, supra. . . . The purpose of interpretation is not to improve a statute but rather to explain the express language used in the statute. Lewis v. Hitt, 370 So.2d 1369 (Ala. 1979).
The appellant contends that the language of the smackover provision, which reads, "said additional increase shall be limited to those oil and gas wells from between 15,000 *Page 4 
and 15,800 feet in the smackover formation" (emphasis added), should properly be construed by reading that provision in conjunction with the sentence immediately preceding it. The preceding sentence limits the increase on wells that go into production after the effective date of the Act to 4% for a period of ten years and then provides that after ten years it shall be raised to 6%. By reading the two sentences together, appellant urges that the smackover provision would refer only to the increase from 4% to 6% on new wells after a ten-year moratorium and not to the statewide severance tax increase from 4% to 6%. In other words, the appellant urges that the smackover provision requires that new wells will all be taxed at a rate of 4% for ten years, and then there shall be an increase to 6% on those new wells in the smackover formation at the depth specified. According to the appellant, the smackover provision was not intended to limit the entire Act so that wells in the smackover formation at that depth were the only ones to be taxed at a rate of 6%.
The manifested intent of the legislature, as stated in the Act itself, was to levy this tax upon "every person engaging or continuing to engage within the State of Alabama in the business of producing or severing oil or gas. . . ." This a clear and unambiguous statement that the legislature intended for the tax increase to apply statewide. Moreover, Act No. 79-434, specifically replaces and amends Code of 1975, §40-20-2 which imposed a 4% severance tax statewide. If this Act were interpreted as applying only to those wells in the smackover formation at the specified depth, and only in Escambia County, there would be no provision for taxing the rest of the state. Certainly that was not the intent of the legislature.
After a careful reading of the Act, we are convinced that the smackover provision should logically be read in conjunction with the preceding sentence and should only by construed as a limitation on the taxing of new wells. Although the appellees put forth various forms of extrinsic evidence, some of which was clearly inadmissible, in order to prove the intent of the legislature, the general rule is that when the intent of the legislature can be determined from the language of the statute itself, we do not need to resort to extraneous matters to determine the legislative intent. "Courts can only learn what [the] Legislature intended by what it has said, and have no right to stray into mazes of conjecture or search for an imaginary purpose, in construing [a] statute." AlabamaIndustrial Bank v. State ex rel. Avinger, 286 Ala. 59,237 So.2d 108 (1970). We are thus compelled to find that the smackover provision was not intended by the legislature to be a limitation which affected the entire Act.
The trial court held that because of the inclusion of the smackover provision Act No. 79-434 was a local Act. This decision was apparently based on the authority of Peddycoart v.City of Birmingham, Ala., 354 So.2d 808 (1978) in which this Court held that if at the time legislation was adopted it applied to any political subdivision less than the whole state, it was a local Act.
Since we interpret the smackover provision as being a limitation on the taxing of new wells, and not as a limitation on the entire Act, we find that Act No. 79-434 is one which in its terms and effects applies to the whole state. Not only does the Act impose an increased severance tax on the production of oil and gas statewide, but the smackover provision itself applies statewide by giving a statewide incentive to create new wells except in the smackover formation at a depth of 15,000 to 15,800 feet. Accordingly, Act No. 79-434 is a general law.
Based on the erroneous determination that Act No. 79-434 was a local law, the trial court held that Act No. 79-434 violated Section 106 of the Alabama Constitution because it was not published or posted as required by that section for local laws, that it violated Section 111 of the Alabama Constitution because Act No. 79-434 had been introduced as a general law and amended so as to be a local law on passage, and violated Section 105 of the Alabama Constitution *Page 5 
because Act No. 79-434 was a local law which dealt with a subject covered by a general law. Since we have determined that Act No. 79-434 is a general law, there can be no conflict with any of these sections and we need not discuss these arguments in depth.
Act No. 79-434, Section 1 (d)(e), reads as follows:
 Any person who is a royalty owner shall be exempt from the payment of any increase in taxes herein levied and shall not be liable therefor. (e) The privilege tax herein levied shall be absorbed and paid by those persons engaged in the business of producing or severing oil or gas only, and the producer shall not pass on the costs of such tax payments, either directly or indirectly, to the consumer; it being the express intent of this act that the tax herein levied shall be borne exclusively by the producer or severer of oil or gas.
The trial court held that because of the above-quoted royalty owner exemption and pass-through prohibition, Act No. 79-434 lacked uniformity and established arbitrary classifications in violation of the equal protection and due process clauses of the federal and state constitutions.
The appellees urge that there was no reasonable ground for exempting royalty owners from the increase and thus that the trial court correctly found the classification to be arbitrary. They contend that because Code of 1975, § 40-20-1 (8) includes royalty owners within the definition of the term "producers," the tax is being imposed unequally within the class of producers. This, they urge, is especially true since the pass-through prohibition precludes producers from passing the tax on to the consumers.
In Haden v. Watson, 270 Ala. 277, 117 So.2d 694 (1960) this Court discussed the power of the legislature to establish classifications for the purpose of license and excise taxes. There it was said:
 The legislature has the broadest range and powers in establishing classifications or subclassifications for the purpose of license and excise taxes. State v. Pure Oil Co., 256 Ala. 534, 55 So.2d 843. Further the legislature in classifying subjects for taxation is not required to state the grounds for classification. State v. Pure Oil Co., supra. . . .
 Furthermore particular privileges, occupations, classes or subclasses of businesses may be licensed and taxed and other privileges, occupations or businesses need not be included and can be entirely exempt therefrom. Henry v. Shevinsky, 239 Ala. 293, 195 So. 222; State v. Pure Oil Co., supra.
 In other words the classification of occupations and privileges for taxation is largely a matter of legislative discretion, and it will not be interfered with by the courts as being in violation of the rules of equality and uniformity unless it is palpably arbitrary and unreasonable and unless there is no conceivable state of facts which would support it. State v. Pure Oil Co., supra; Carmichael v. Southern Coal Coke Co., 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245, 109 A.L.R. 1327; Frazier v. State Tax Commission, 234 Ala. 353, 175 So. 402, 110 A.L.R. 1479.
In the instant case the legislature sought to exclude royalty owners from the increase in the severance tax. Admittedly royalty owners are a subclass of producers under Code of 1975, § 40-20-1 (8); however in Haden, supra, we noted that a distinction in the imposition of taxes can be made between subclassifications. Such a distinction will not be interfered with unless there is no conceivable set of facts to support it. Here it is conceivable that the exclusion of royalty owners from this increase in tax could encourage the development of new oil and gas wells. There being a conceivable reason to support the distinction, the legislative enactment should not be deemed arbitrary and should be upheld.
Similarly the trial court held the smackover provision to be an arbitrary and unconstitutional classification because the increase was limited only to the production from the depth of 15,000 to 15,800 feet. Since the legislature could have intended to encourage oil and gas production in other *Page 6 
parts of the state and in other layers of the earth, we find this to be a reasonable distinction and hold this provision was not unconstitutional for this reason either.
The trial court also held that because of the royalty owner exemption and the pass-through prohibition, Act No. 79-434 was unconstitutional in that it impaired contractual obligations. The contractual obligations in question were leases which required royalty owners to pay their share of severance taxes, and sales contracts which required the purchasers to reimburse the plaintiffs for tax increases. The United States Supreme Court faced a similar situation in Barwise v. Sheppard,299 U.S. 33, 57 S.Ct. 70, 81 L.Ed. 23 (1936) where it was said:
 Plainly no stipulation in the lease can be of any avail as against the power of the State to impose the tax, prescribe who shall be under a duty to the State to pay it, and fix the time and mode of payment. And this is true even though it be assumed to be admissible for the lessors and the lessee to stipulate as to who, as between themselves, shall ultimately bear the tax. . . .
Thus it is clear that parties to a private contract cannot limit a state's ability to levy taxes. This was recognized by the Alabama Supreme Court in McPhillips Mfg. Co. v. Curry,241 Ala. 366, 2 So.2d 600 (1941) where it was said:
 The existence of an executory contract between or among two or more individuals presents no obstacle to the right or power of the State to levy or impose a tax which may adversely affect the financial interest of either or any of the parties which may have been acquired under or by reason of the mutual covenants of such parties to the contract. . . .
Thus, although one party to the contracts involved here may receive less than anticipated as a result of Act No. 79-434, such a decrease does not amount to an impairment of the contracts. The legislature must retain the authority to tax free from interference by the contracts of private persons. Act No. 79-434 does not unconstitutionally impair the contracts of the parties.
The trial court determined that Act No. 79-434 was an unconstitutional burden on interstate commerce and thus violated the United States Constitution. Specifically the trial court found that the pass-through prohibition violated Article I, Section 8, Clause 3 of the U.S. Constitution because Congress had preempted the field which the pass-through prohibition attempted to address. The trial court held that the Natural Gas Policy Act of 1978, codified at 15 U.S.C. § 3301-3432, prevented the legislature from mandating that the increased severance tax could not be be passed on by the producers.
The Natural Gas Policy Act established maximum lawful prices at the wellhead for all sales of natural gas. That Act in Section 3320 reads:
 [A] price for the first sale of natural gas shall not be considered to exceed the maximum lawful price applicable to the first sale of such natural gas under this part if such first sale price exceeds the maximum lawful price to the extent necessary to recover (1) state severance taxes attributable to the production of such natural gas and borne by the seller . . .
Nowhere in that section is it stated that the oil companies are entitled to "pass-through" increases on state severance taxes. Rather, the Act merely provides that the lawful ceiling on the first sale at the wellhead may be raised if a severance tax is imposed by the states. The two Acts are aimed at entirely different purposes. In other words, although it would be perfectly permissible for the oil and gas companies to raise the price for the first sale of natural gas, subject to the limitations of the Natural Gas Policy Act, all that Act No. 79-434 requires is that the increase in severance tax mandated by that Act be borne by the producer or severer of the oil or gas. Thus the pass-through prohibition contained in Act No. 79-434 does not conflict with the Natural Gas Policy Act of 1978, and the trial court's finding to that effect is due to be reversed. *Page 7 
The trial court declared that Act No. 79-434 was unconstitutional because it violated Section 45 of the Alabama Constitution of 1901 which provides that "[e]ach law shall contain but one subject which shall be clearly expressed in the title. . . ."
The title to Act No. 79-434 reads as follows:
 To amend Code of Alabama 1975, Sections 40-20-2 and 40-20-8, so as to increase the rate of tax; to provide further for distribution of the proceeds of the tax; and to provide certain exemptions from the increased rate.
The trial court declared that Act No. 79-434 covered more than one subject and that the title did not clearly express the subjects of the Act. Specifically the trial court found that the title did not make any reference to the following topics:
 1. The purported consumer protection and/or pricing regulation in form of the prohibition against pass through contained in Section 1 (e).
 2. The provision requiring the "producer or severer" to absorb and pay the tax.
3. The extent of the increase of the tax.
 4. The fact that the Act imposed differing tax rates on different production.
 5. That producers would be required to bear the royalty owner's share of the tax.
 6. The fact that the tax is not based on ownership of the mineral interest.
 7. That purchasers would be prohibited from accounting for and paying the tax in derogation of the provisions of Section 40-20-3.
The purpose of Section 45 has generally been said to be to sufficiently disclose the subject of the Act so as to apprise the legislature and the public of the matter to be legislated therein. Bozeman v. Conecuh County Board of Education, 282 Ala. 543, 213 So.2d 388 (1968).
In Boswell v. State, 290 Ala. 349, 276 So.2d 592 (1973) this Court, quoting Ballentyne v. Wickersham, 75 Ala. 533 (1883), stated the rules governing the application of Section 45. There it was said:
 "[T]he title of a bill may be very general, and need not specify every clause in the statute. Sufficient if they are all referable, and cognate to the subject expressed. And when this subject is expressed in general terms, every thing which is necessary to make a complete enactment in regard to it, or which results as a complement of the thought contained in the general expression, is included in, and authorized by it." . . .
In this case we find that the title of the Act was sufficient to meet the requirements of Section 45. The seven provisions which the trial court found not to be included in the title are provisions which are necessary to make the enactment complete or at least are provisions which result as a complement of the thought contained in the general expression of the title. Therefore we hold that Act No. 79-434 does meet the requirements of Section 45.
The trial court held that Act No. 79-434 was "so vague, uncertain, indefinite, ambiguous, and conflicting with and repugnant to other existing provisions of other statutes that it cannot be enforced on any rational basis and, therefore, must be stricken." While we recognize that courts have the power to declare legislative enactments inoperative and void for indefiniteness or uncertainty, that power should only be exercised when the statute is so incomplete, or irreconcilably conflicting, or so vague and indefinite, that it cannot be executed, and the court is unable to determine with any reasonable degree of certainty what the legislature intended.Jansen v. State ex rel. Downing, 273 Ala. 166, 137 So.2d 47
(1962). We do not find this Act to be so defective.
Moreover, we note that in construing statutes courts must presume that statutes are constitutional and should not hold them unconstitutional unless they are convinced beyond a reasonable doubt of their unconstitutionality. Alabama DairyCommission v. Food Giant, Inc., Ala., 357 So.2d 139 (1978). *Page 8 
In Brittain v. Weatherly, 281 Ala. 683, 207 So.2d 667 (1968), quoting State ex rel. Montgomery v. Merrill, 218 Ala. 149,117 So. 473 (1928), this Court said:
 "It is a well-recognized rule that it is the duty of the court to uphold a law when it is fairly susceptible of two interpretations, one of which maintains its constitutionality and the other strikes it down, though the adoption of the former be the less natural. . . ."
For this reason we find that the statute is not void for indefiniteness or uncertainty.
Since we have determined that the provisions of Act No. 79-434 are constitutional, we do not need to address the question of whether the severability clause should have been used by the trial court to save this Act or portions thereof.
On the same day the trial court rendered the final order in this case, it granted partial summary judgment in favor of plaintiffs Warrior Drilling and Engineering Company, Inc., Pruet Production Company and Anderman Operating Company under the "26 barrel provision" of Act No. 79-434, which provides that "All wells producing less than 26 barrels of oil per day shall be taxed at the rate of four per centum (4%) of the gross value of said oil or gas at the point of production." The trial judge specifically found that the exemption in the Act refers to both oil and gas production. The trial court's order granting the partial summary judgments stated:
 Since the language of the exemption from the face of the Act is clear and unequivocal, and each of these Plaintiffs have proven that only one or two of their wells at most produce more than 26 barrels of oil per day, said Plaintiffs Warrior Drilling and Engineering Co., Inc., Pruet Production Company and Anderman Operating Company are entitled to judgment. [Emphasis added.]
While we agree that the exemption in the Act refers to all wells producing either oil or gas, the trial court's order granting partial summary judgment is illogical. Since the trial court recognizes that one or two of the plaintiffs' wells do produce more than 26 barrels of oil, it was improper to hold that Act No. 79-434 did not apply to those plaintiffs. For that reason the motion for partial summary judgment was improperly granted.
For the above reasons we hold that Act No. 79-434 was valid in its entirety and the order of the trial court must be and is hereby reversed and remanded.
REVERSED AND REMANDED.
All the Justices concur.