This appeal necessitates further interpretation of the oil and gas severance tax statute which was the subject of Eagertonv. Exchange Oil and Gas Corporation, 404 So.2d 1 (Ala. 1981). The question is whether an exception in the statute swallows the rule as to gas producers. We hold that it does not, and reverse.
Terra Resources, Inc. (Terra), Petroleum Corporation of Texas (PETCO), and other companies filed suit to recover oil and gas severance taxes paid under protest. After *Page 808 
a remand by this Court,[1] the circuit court ordered a refund of substantial amounts of the tax paid on gas production. Ralph P. Eagerton, Jr., as Commissioner of Revenue of the State of Alabama (the Commissioner), appealed. The above-named companies filed briefs as appellees[2]; we shall refer to them as the gas producers.
In 1979 the Alabama Legislature passed an Act, "To amend Code of 1975, Sections 40-20-2 and 40-20-8, so as to increase therate of tax; to provide further for distribution of the proceeds of the tax; and to provide certain exemptions from the increased rate." 1979 Ala. Acts No. 79-434, p. 687 (emphasis added).[3] Prior to this act, the title of § 40-20-2 was "Levy and amount of tax upon business of producing or severing oil orgas from soil, etc., generally." (Emphasis added.) Nevertheless, the gas-producing appellees argue that the "increase" enacted in Act No. 79-434 of the tax upon the business of producing oil or gas only applies to gas production if a gas well produces 26 barrels or more of oil per day.
In other words, Act No. 79-434 raised the four percent (4%) previously found in § 40-20-2 to six percent (6%). One of the exemptions mentioned in the title as set out above reads, "All wells producing less than 26 barrels of oil per day shall be taxed at the rate of four per centum (4%) of the gross value of said oil or gas at the point of production."[4] The gas producers herein contend that because this sentence refers to "all wells," not "all oil wells," and to "said oil or gas," it exempts from the two percent increase of the statute gas produced at wells which do not also produce the stated amount of oil.
This Court, in Eagerton, supra, "agree[d] that the exemption in the Act refers to all wells producing either oil or gas." 404 So.2d at 8. No analysis accompanied this remark, however, and the weight of the holding on this point rested elsewhere: "Since the trial court recognizes that one or two of the plaintiffs' wells do produce more than 26 barrels of oil, it was improper to hold that Act No. 79-434 did not apply to those plaintiffs." Id. Before we follow the above virtually obiter dictum agreement with the gas producers' position, therefore, we feel obliged to examine the matter more closely.
That the statute as a whole proposes to increase the tax on gas as well as oil can be gleaned not only from the short titles set out above, but also from other language in the statute. For instance, the sentence immediately preceding the twenty-six barrel exemption reads, "The amount of such tax shall be measured at the rate of six per centum of the gross value of said oil or gas at the point of production." It does not seem reasonable that a tax increase levied in one sentence should be effectively negated by an obscure reference in the following sentence. Statutes are to be construed as a whole and the parts thereof harmonized if possible. Darks Dairy, Inc. v.Alabama Dairy Commission, 367 So.2d 1378 (Ala. 1979); In reAshworth, 291 Ala. 723, 287 So.2d 843 (1974), Lee Optical Co.of Alabama v. State Bd. of Optometry, 288 Ala. 338,261 So.2d 17 (1972).
Exemptions from taxation are to be strictly construed against the exemption and in favor of the right to tax, and the burden is on one seeking an exemption to clearly establish the right.Community Action Agency of Huntsville v. State, 406 So.2d 890
(Ala. 1981); Title Guarantee Loan Trust Co. v. Hamilton,238 Ala. 602, *Page 809 193 So. 107 (1940); Brundidge Milling Co. v. State, 45 Ala. App. 208, 228 So.2d 475 (1969). To be sure, there is a countervailing rule of construction that taxing statutes are to be construed strictly in favor of the taxpayer and against the taxing authority. State v. Hall, 278 Ala. 359, 178 So.2d 518
(1965); Gotlieb v. City of Birmingham, 243 Ala. 579,11 So.2d 363 (1943). We regard the exemption rule as more specific, however, and more directly pertinent to this case.
Furthermore, we give favorable consideration to the Commissioner's interpretation because he administers the statute and has expertise on the subject. This rule of construction applies only where the statute is of doubtful meaning — which is emphatically the case with this provision — and only to aid the court in determining legislative intent — which is also unclear here. The Commissioner's interpretation is not binding on the Court, but is persuasive.See, Broadwater v. Blue Gray Patio Club, 403 So.2d 209 (Ala. 1981); Hulcher v. Taunton, 388 So.2d 1203 (Ala. 1980);Employees' Retirement System of Alabama v. Oden, 369 So.2d 4
(Ala. 1979); Moody v. Ingram, 361 So.2d 513 (Ala. 1978);Alabama Public Service Commission v. Continental TennesseeLines, 284 Ala. 27, 221 So.2d 385 (1969); Buchanan v. State,274 Ala. 592, 150 So.2d 200 (1962); Glencoe Paving Co. v.Graves, 266 Ala. 154, 94 So.2d 872 (1957); Dixie Coaches, Inc.v. Ramsden, 238 Ala. 285, 190 So. 92 (1939).
The Commissioner refers to the sentence in question as the "stripper well exemption." He states that courts recognize the term "stripper wells" as referring to marginally productive wells, generally defined as producing less than 10 barrels of oil or a proportionate number of cubic feet of gas per day.See, e.g., In re Dept. of Energy Stripper Well Exemption,520 F. Supp. 1232 (D.Kan. 1981).
The Commissioner claims that by limiting the exemption to wells producing less than 26 barrels of oil per day, the legislature has provided an exemption for oil stripper wells. He contends that the words "or gas" in the sentence are mere surplusage, included here only in a formulaic repetition of the words "oil and gas" or "oil or gas" throughout the Act. This reasoning leaves gas stripper wells out of the coverage of the exemption, but the burden is on the gas producers to prove that they come within the terms of the exemption anyway. The Commissioner points out that an equivalence between oil volume and gas volume can be computed by converting both to BTU's (one barrel of oil being roughly equivalent to 6,000 cubic feet of gas), and seems to suggest that this method could provide a definition for gas stripper wells under the statute. This question is not properly presented for review, so we decline to rule on it. We do feel that the presumption against exemptions would create a hurdle for the gas producers in seeking such an interpretation.
The gas producers argue that both the legislative history and a literal reading of the statute prove that the legislature did not intend to limit the exemption to oil wells. We do not agree.
The gas producers called Mr. Louis G. Green, the director of the Legislative Reference Service, to testify concerning drafts of the bill which became Act 79-434. Mr. Green's office helped Representative Hines prepare the bill. Two of the drafts in Mr. Green's file began the exemption in question with the words "all oil wells" instead of "all wells." The gas producers assert that because the final bill did not say "All oil wells," gas wells which do not produce 26 barrels of oil per day are exempt from the increase levied by Act No. 79-434.
This is clearly irrelevant evidence. Without any proof that the drafts beginning with "all oil wells" were ever introduced in the legislature, these documents are no indication of the legislative intent. Nor is the fact that Mr. Hines introduced a version without the word "oil" included evidence of legislative intent. The motives or reasons of an individual legislator are not relevant to the intent of the full legislature in passing the bill. James v. Todd, 267 Ala. 495, 103 So.2d 19 (1957).
Although there is some logic to the gas producers' reading — that any well *Page 810 
which produces less than 26 barrels of oil per day shall be taxed at four percent of the value of all oil and gas from the well — we find it implausible that the legislature would enact a statute to increase the severance tax on oil and gas and then obliquely exempt all gas from the increase except for gas which happens to come from wells which also produce substantial quantities of oil. Such a broad exemption should be clearly set out if such is the legislative intent. Nearly all of the gas producers' wells would be exempt if we were to accept their reading of the statute. We do not find that they have met their burden of proving that they come within the exemption.
The statement by this Court that the exemption refers to all wells producing either oil or gas was made in conclusory terms after a long discussion of other complicated issues. After fuller consideration, we disagree with the position urged by the gas producers and hold that the "26 barrels of oil" exemption does not serve to exempt virtually all gas production in the state from the increase levied by the statute.
The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
All the Justices concur.
[1] Eagerton v. Exchange Oil Gas Corp., 404 So.2d 1 (Ala. 1981); various oil producing companies have also appealed after remand of the action.
[2] Three other gas companies who were parties below adopted the position of the above-named appellees and all five filed motions to dismiss the appeal. In view of our decision on the merits, these motions are denied.
[3] The legislature amended this code section again in 1980, but that act is not at issue here. Acts of Alabama 1980, Act No. 80-708.
[4] Act No. 80-708 (see note 3) contains an identically worded exemption for wells producing less than 40 barrels of oil per day.