HOLMES, Judge.
This is an oil and gas severance tax case.
The Department of Revenue of the State of Alabama (State) issued a final assessment for oil and gas severance taxes against I.N. Hickox, the unit manager for the Citronelle Unit (taxpayer), in the amount of $1,475,524.66. The taxpayer filed a notice of appeal with the Mobile County Circuit Court, pursuant to Ala. Code (1975), § 40-2-22.
After a hearing on the merits, the trial court ruled in favor of the taxpayer. The State, through able counsel, appeals.
I
The record, when viewed with the attendant presumptions accorded the trial court’s action, reveals, in pertinent part, that, after primary recovery methods were exhausted at the Citronelle Field, it became necessary to institute enhanced recovery methods to maximize recovery. When using enhanced recovery methods, it is necessary to use some wells for injection, some for disposal, *949 others to control pressure, some for monitoring purposes, and others for production. To maximize oil recovery, all wells cannot be actively producing oil at all times. Therefore, a large portion of the Citronelle Field was approved for unitization by the oil and gas board as the Citronelle Unit.
The evidence indicates that, prior to uniti-zation, a well in each tract was actively producing. However, unitization was necessary to maximize production and insure the flexibility necessary to convert the various wells to more effective uses. Owners of each of the tracts in the unit share in the total production revenue of the unit as a whole, without regard to whether the well located on the owner’s tract actually produces oil during the accounting period. Ala.Code (1975), § 9-17-87. Each owner pays severance tax to the State on the amount of revenue they receive.
The taxpayer had paid oil and gas severance tax at the rate of four percent on the basis that the wells produced less than ten barrels of oil per day. Ala.Code (1975), § 40-20-2(a). The State entered its final assessment on the basis that the taxpayer’s wells produced more than ten barrels of oil per day, and, therefore, the eight percent tax rate was applicable. (This has been referred to as the “stripper well exemption.” Eagerton v. Terra Resources, Inc., 426 So.2d 807 (Ala.1982). The quantity which would entitle the taxpayer to this exemption is currently twenty-five barrels of oil per day. It is undisputed that, during the period of time covered by the State’s final assessment involved in this case, the applicable quantity which would entitle the taxpayer to this exemption was ten barrels of oil per day.)
The key statutory provision for purposes of this case is Ala.Code (1975), § 40-20-2(e), which sets out the procedure for calculating per well production for a unit operation. This statute states, in pertinent part:
“In all cases of production of oil from unit operations as authorized and approved by the state oil and gas board of Alabama, for purposes of computing the per well production aforesaid, the aggregate production of oil from the entire unit shall be divided by the number of wells within the unit, including injection, disposal and other wells utilized in unit operations, and the quotient thereof shall be deemed and declared to be the number of barrels of oil produced from each well in such unit regardless of the actual amount of oil per day produced from the well, if any.”
When construing a statute, the court must ascertain and give effect to the legislature’s intent in enacting the statute. This legislative intent may be ascertained from the language used in the statute, the reason and necessity for the statute, and the purpose sought by the statute. Ex parte Holladay, 466 So.2d 956 (Ala.1985). If there is no ambiguity or uncertainty in the language of the statute, then the clearly expressed intent of the legislature must be given effect. Ex parte Holladay, 466 So.2d 956.
It is clear from the reading of the statute that the legislature recognized that it was necessary to set out a procedure for determining per well production from unit operations authorized and approved by the state oil and gas board.
The first issue in this case is what did the legislature intend when it included in the statute the phrase “divided by the number of wells within the unit, including injection, disposal and other wells utilized in unit operations.”
The State argues that this phrase indicates that the legislature intended that the well actually be used in some manner on a daily basis to be included in the calculation of per well production. The State points out that favorable consideration should be accorded to the interpretation given by the Commissioner because he administers the statute and has expertise on the subject. Eagerton, 426 So.2d 807. However, the Commissioner’s interpretation is only persuasive authority and is not binding on the court. Eagerton, 426 So.2d 807.
The taxpayer contends that all the wells recognized to be in the unit by the oil and gas board should be included in the calculation of per well production. The taxpayer bases this contention on two points. The *950 first is that the word “including” is not meant to be restrictive or limitational. Sims v. Moore, 288 Ala. 630, 264 So.2d 484 (1972); Ackelis v. Musgrove, 212 Ala. 47, 101 So. 670 (1924). The phrase following the word “including” is merely specifying some of the types of wells which áre to be included in the calculations.
The second point is based on testimony given at the hearing that the oil and gas board has a procedure for reviewing all of the inactive wells in the unit every six months to determine whether these inactive wells should be permanently abandoned. If the board determines that the well has no future utility, then it will order the well to be permanently abandoned. The record reveals that only one well in this unit was ordered permanently abandoned and that it was not included in the well count.
We note that there was evidence that all of the wells were important to the overall recovery plan and to insure the flexibility necessary to maximize recovery from this unit. Additionally, it does not appear that any of these wells was drilled for the fraudulent purpose of reducing the amount of tax owed. Therefore, we affirm the trial court’s conclusion that the legislature intended to include all wells within the unit in the calculation of per well production and that the taxpayer does not have to show specific “utilization” of each well on a daily basis — only that the well was necessary for the overall plan for maximum recovery.
This court is well aware that exemptions from taxation are to be strictly construed in favor of the right to tax and that the taxpayer seeking such an exemption must clearly establish that he is entitled to that exemption. Eagerton, 426 So.2d 807. However, based upon our construction of the statute for the above-stated reasons, the taxpayer has established the right to said exemption.
The State also contends that the trial court committed reversible error when it allowed a geologist/engineer to testify as to the intent of this statute. In this case, the trial court was required to determine which wells the legislature intended to be included under the statute. It may well be that the trial court should not have allowed this testimony. However, as seen from the above, there existed other evidence which the trial court could consider, and, based upon the reasoning contained in the trial court’s judgment, it does not appear that the trial court considered this testimony when construing this statute. Therefore, this testimony as to the intent of the statute did not appear to affect the substantial rights of the parties and is harmless error. Rule 61, Alabama Rules of Civil Procedure.
II
The final issue deals with the value assigned the stock tank vapor gas produced by the unit and the severance tax paid thereon. The State had issued a final assessment of $1.36 per mcf, and the taxpayer, who had paid $0.25 per mcf, appealed. After considering all the factors revealed by the evidence, the trial court found that the taxpayer had paid the correct amount of severance tax.
An assessment made by the department of revenue is considered prima facie correct. On appeal, the taxpayer has the burden to prove such assessment is incorrect. State v. Woodham, 276 Ala. 662, 166 So.2d 391 (1964). The State contends that the taxpayer failed to meet this burden because the only evidence presented was the testimony of the taxpayer. The State argues that the taxpayer’s opinion as to the value of the gas is totally incompetent and self-serving.
Additionally, the State cites this court to Ala.Code (1975), § 40-20-1(3), wherein it is stated:
“VALUE. The sale price or market value at the mouth of the well. If the oil or gas is exchanged for something other than cash, if there is no sale at the time of severance or if the relation between the buyer and the seller is such that the consideration paid, if any, is not indicative of the true value or market price, then the department shall determine the value of the oil or gas subject to the tax *951 hereinafter provided for, considering the sale price for cash of oil or gas of like quality.
It is undisputed that the gas produced by the Citronelle Unit was not sold, but some of the gas was used in unit operations. Therefore, pursuant to this statute, the State had the authority to assign a value to the gas. The State examined the records submitted by various taxpayers in the area surrounding the Citronelle Unit and assigned a value of $1.36 per mcf.
The record reveals that stock tank vapor gas was produced as a by-product of oil production in this unit operation. This gas was not marketable because of its peculiar chemical properties (58% of the gas produced was not “gas”; rather it was nitrogen, oxygen, and carbon dioxide). The evidence also indicates that only 46% of the gas produced was used in unit operations. Additionally, it was revealed that the taxpayer reported 100% of its stock tank vapor gas as production from unit operations and paid tax upon the 100% volume at a rate of $0.25 per mcf.
The State admitted that the Citronelle Unit was not required to pay severance tax on gas that was not used in unit operations (54% of the gas produced was not used in this case) or on the volume of gas reported which was not gas, but, rather, was air (58% of “gas” produced was nitrogen, oxygen, and carbon dioxide). However, the State’s final assessment was based upon the taxpayer’s report of 100% of the volume of gas produced from the unit. Therefore, when the volume of gas actually used (19.32%) is multiplied by the $1.36 per mcf value, the resulting amount would be close to the amount paid by the taxpayer based on $0.25 per mcf on 100% of the volume.
When the evidence is conflicting, there is a presumption of correctness accorded the trial court’s decision, and this decision will not be disturbed on appeal unless plainly wrong or unjust. State v. City Wholesale Grocery Co., 283 Ala. 426, 218 So.2d 140 (1969). After considering all the factors, there was evidence to support the trial court’s findings with respect to the valuation of the gas and the propriety of the tax paid by the Citronelle Unit.
This case is due to be affirmed.
AFFIRMED.
BRADLEY, J., concurs.
WRIGHT, P.J., concurs in the result.