I concur to reverse the judgment of the Court of Civil Appeals, for the reasons stated below.
The question presented is whether Mr. McLeod and Ms. Dinkins have attained "continuing service status" or "tenure" as full-time instructors at Wallace State Community College. More specifically, we granted certiorari review as to two issues raised by the petition: (1) whether the Court of Civil Appeals wrongly decided a question of first impression, that is, "whether the Fair Dismissal Act, Ala. Code 1975, § 36-26-100 et seq., covers instructional personnel at Alabama's two-year institutions of higher learning," and (2) whether the judgment of the Court of Civil Appeals conflicts with Ex parte Clayton, 552 So.2d 152
(Ala. 1989), by accepting the chancellor's interpretation of the Revised Hearing Procedure even though that interpretation is contrary to this Court's interpretation of the parallel provision of the Fair Dismissal Act. I disagree with the lead opinion's conclusion that the Fair Dismissal Act applies to instructional personnel such as McLeod and Dinkins, for reasons I shall state below. As to the second issue, however, I agree with the petitioners' argument that the holding of Clayton, that a three-year probationary period of employment does not have to be three consecutive or continuous years, applies to instructional personnel governed by the Revised Hearing Procedure, just as it does to employees governed by the Fair Dismissal Act.
The first issue raises the question whether instructional personnel at junior colleges and trade schools are "employees," as that term is defined by § 36-26-100, Ala. Code 1975, part of the Fair Dismissal Act. I agree generally with Judge Crawley's analysis for the Court of Civil Appeals, under his discussion of the principle of ejusdem generis, that a reading of that section as a whole shows that the Fair Dismissal Act was intended to cover support personnel at the described educational institutions, but not to cover teachers, faculty, or instructional personnel. The dispositive aspect of the language of that section, to my mind, is the following sentence: "Only full-time employees who are not otherwise covered by the state merit system, the teacher tenure law, or other state statute at the time this article is adopted are intended to be covered by this article."
When the Fair Dismissal Act was adopted in 1983, faculty members at junior colleges and trade schools were covered by the following provision of § 16-60-111.4, which was adopted in 1982:
 "The State Board of Education, upon recommendation of the chancellor, shall be authorized to:
". . . .
 "(5) Prescribe qualifications for faculty and establish a salary schedule and tenure requirements for faculty at each junior college and trade school."
The Revised Hearing Procedure, which was adopted pursuant to this authorization, provides tenure requirements for faculty members at junior colleges and trade schools. McLeod and Dinkins argue that because these procedures are not found in statutes, but in administrative rules, junior college and trade school faculty members are not "otherwise covered by . . . other state statute" within the meaning of § 36-26-100. I disagree. "[A]lthough the legislature may not delegate its power to make law, it may vest a considerable measure of discretionary authority in the agency charged with administering the enactment." Employees' Retirement System of Alabama v. Oden,369 So.2d 4, 7 (Ala. 1979). In § 16-60-111.4 (5), the legislature *Page 689 
had provided for tenure for junior college and trade school faculty members by delegating to the Board of Education and the chancellor the authority to "[p]rescribe . . . tenure requirements" for them. A year later, the legislature excepted from the coverage of the Fair Dismissal Act employees who were covered by a statute such as § 16-60-111.4(5). I would hold that the Fair Dismissal Act does not apply to junior college and trade school faculty members.
The legislature also gave the chancellor the authority to "[i]nterpret the rules and regulations of the [State Board of Education] concerning the junior colleges and trade schools," Ala. Code 1975, § 16-60-111.5 (2), and "to take any and all actions necessary and proper to administer policies, rules and regulations of the board in carrying out its responsibility for the management and operation of the junior colleges and trade schools," § 16-60-111.5 (4). Section 3.A of the 1984 version[4] of the Revised Hearing Procedure provided:
 "All employees as defined in subsection 1.B. of these regulations shall be deemed employed on a probationary status for a period of three years from the date of his or her initial employment."
The chancellor, Dr. Fred Gainous, executed an affidavit in which he stated:
 "I interpret the three-year probationary period required for tenure as a full-time community college instructor to be three consecutive academic years (September 1-August 31) in which the respective instructor works full-time (teaches at least 15 credit hours per quarter and works a total of at least 35 clock hours during each week of the respective quarter) for at least three academic quarters per academic year."
However, § 3.A of the Revised Hearing Procedure simply tracks the language of § 36-26-101 (a), part of the Fair Dismissal Act, which provides:
 "All employees as defined in section 36-26-100
shall be deemed employed on a probationary status for a period not to exceed three years from the date of his or her initial employment. . . ."
In Ex parte Clayton, 552 So.2d 152, 154-55 (Ala. 1989), this Court interpreted this language as follows:
 "If the legislature had intended that the requisite term of probationary employment be consecutive or continuous, it would have so stated. There is no language within the text of the Fair Dismissal Act to support the construction requiring three consecutive years of probationary service from the date of the employee's initial employment."
The chancellor's interpretation of § 3.A is therefore contrary to this Court's interpretation of § 36-26-101 (a). The only difference in the language of these two provisions is that § 36-26-101 (a) refers to "a period not to exceed three years," whereas § 3.A refers to "a period of three years" from the date of initial employment. If anything, therefore, § 3.A contains less indication that consecutive years or continuous employment was intended.
The chancellor's interpretation would have the anomalous effect that one class — support personnel protected by the Fair Dismissal Act — can work intermittently for a period of years and achieve continuing service status under Clayton, without having to work three consecutive years, while another class of persons working for the same institution — faculty members protected by §16-60-111.4 (5) and the Revised Hearing Procedure — who work the same schedule would not achieve tenure under the chancellor's interpretation. The chancellor's interpretation functions in a way that is contrary to the principle that underlies tenure laws, the protection of employees; that is, it gives junior colleges and trade school administrators an incentive to periodically reduce their faculty members to part-time employment or to employ them for only two quarters or less in an academic year, for the purpose of preventing them from achieving tenure. Thus, under that interpretation, a person can work for a junior college or a trade school for many years, as McLeod and Dinkins have done, and never *Page 690 
attain the job security that tenure laws were intended to provide.
An administrative agency's interpretation of a statute will not be given deference if it is contrary to the legislative intent.McCullar v. Universal Underwriters Life Ins. Co., 687 So.2d 156,163-64 (Ala. 1996); State v. Vaughan, 241 Ala. 628, 4 So.2d 9
(1941); State Health Planning Resource Dev. Admin. v. Rivendellof Alabama, Inc., 469 So.2d 613, 614 (Ala.Civ.App. 1985). The chancellor's interpretation of § 3.A of the Revised Hearing Procedure is contrary to the legislative intent behind the virtually identical language of § 36-26-101 (a), as construed by this Court in Ex parte Clayton. For this reason, I would hold that the Revised Hearing Procedure must be applied in a manner consistent with this Court's holding in Clayton. I therefore agree that the judgment of the Court of Civil Appeals must be reversed, and that the cause must be remanded.
MADDOX, J., concurs.
[4] The Revised Hearing Procedure was revised in 1994, but no change was made to the language quoted here, except the numbering of the sections.